**Daniel GABLER, Plaintiff–Appellant,**

v.

**ROBBINS & MYERS, INC.,
Defendant–Respondent.**

No. 65374.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 17, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 22, 1995.

Application to Transfer Denied
April 25, 1995.

Leonard P. Cervantes, Cervantes & Associates, St. Louis, for appellant.

David E. Larson, Thomas H. Davis, Kristine S. Focht, Watson & Marshall, L.C., Kansas City, for respondent.

KAROHL, Judge.

Daniel Gabler, a welder employed by McGrath Machine Company, Inc., appeals after the trial court granted summary judgment in favor of Robbins & Myers, Inc. on his product liability claim against the manufacturer of a component of a dumbwaiter. The petition for personal injuries is based on injuries Gabler sustained in January 1987, while attempting to unjam the dumbwaiter at McGrath. The dumbwaiter dropped, and its cable broke, crushing Gabler's left hand and arm and severing his left leg. He sued Robbins & Myers alleging the hoist, which Robbins & Myers designed and manufactured, was defective and unreasonably dangerous when sold because it lacked certain safety devices.

The Robbins & Myers hoist was manufactured and shipped to Carter Carburetor in 1946, forty-one years before the injury. Carter Carburetor apparently used the hoist for approximately 28 years. In 1975 James F. McColl, Jr., a former employee of Carter Carburetor and current president of McGrath Machine Co., Inc., bought the hoist. McColl designed and built a dumbwaiter system in a building occupied by McGrath Machine Co., Inc. McColl and McGrath employees installed the hoist in the dumbwaiter system in order to raise and lower the carriage inside the system. The dumbwaiter ran from the first floor of the building to the basement and was used to haul parts and equipment.

When integrated into the dumbwaiter system, the hoist was modified as follows: 1) the hoist is no longer attached to the cable that Robbins & Myers originally furnished; 2) the wire cable was not the same length as that which was originally furnished on the hoist; 3) the breaking strength of the new cable is 4.58 to 5.27 tons, whereas the breaking strength of the original cable was in the range of 7,420 to 8,060 pounds; 4) all original controls, including the push buttons and upper and lower limit switches, were removed from the hoist; and 5) the hoist was altered so that it can be supported from below, whereas it was originally designed to be supported from above by angles bolted to an overhead support, such as a trolley.

In opposition to Robbins & Myers' motion for summary judgment, Gabler submitted an affidavit of Robert Capobianco, a retired journeyman elevator mechanic. Capobianco stated that any modifications to the hoist

were foreseeable alterations which did not substantially change the operation of the hoist and did not unforeseeably render the product unsafe. He also stated the hoist was defective and unreasonably dangerous in that 1) it did not contain an anti-slack or slack cable device; 2) it did not contain weight overload limit switches; and 3) it was not equipped with information or warnings that were firmly affixed to the body of the hoist advising users of the hoist against the use of the hoist for passenger elevator or dumbwaiter applications.

Gabler's point on appeal contains two subpoints. The first subpoint is the trial court erred in granting summary judgment in favor of Robbins & Myers because Gabler stated a cause of action in strict product liability for the defective and unreasonably dangerous design and manufacture of the Robbins & Myers hoist. Robbins & Meyers concedes this error.

The second subpoint is the trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether the hoist when manufactured and sold was defective and unreasonably dangerous, and therefore, the manufacturer may be liable when its defective component is incorporated into a system which is thereby rendered dangerous and which thereafter causes injury to plaintiff.

 When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

 Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propri-

ety of summary judgment is purely an issue of law. Because the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

 The defectiveness of a product is measured as of the time the product enters the stream of commerce. *Carlisto v. General Motors Corporation,* 870 S.W.2d 505, 509 (Mo.App.W.D.1994). In order to recover under a products liability theory for an injury caused by an allegedly defective product, a plaintiff must establish each of the following: 1) defendant sold the product in the course of its business; 2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold. *Id.* As to this fourth element, the plaintiff must produce evidence that neither he nor any third person has made alterations to the product that would create a defect that could be the proximate cause of the damages incurred. *Id.* Subsequent changes or alterations in a product do not relieve the manufacturer of strict liability if the changes were foreseeable and did not render the product unsafe. *Id.*

 Gabler's petition and Capobianco's affidavit would support a finding that the Robbins & Meyers hoist was in a defective condition at the time it was sold due to the lack of a safety device(s). Capobianco stated that lack of an anti-slack cable, weight overload limit switches and warnings against certain applications of the hoist made the hoist defective and unreasonably dangerous. He also stated the modifications to the hoist were foreseeable and did not render the product unsafe.

Robbins & Meyers argues that Gabler alleged a defectively designed dumbwaiter system. That is not correct. Rather, Gabler alleged the hoist, a component part of the dumbwaiter system, was defectively designed and manufactured. The issues are whether the hoist was defective and the use in a

dumbwaiter system foreseeable. The decisive facts are preserved by the Capobianco affidavit.

Based on its incorrect premise of an alleged defectively designed dumbwaiter system, Robbins & Meyers argues that the *Sperry* cases control. They do not. *Sperry v. Bauermeister, Inc.,* 786 F.Supp. 1512 (E.D.Mo.1992) (*Sperry I*) can be distinguished from the present case. In *Sperry I* the plaintiff, a spice mill operator, was injured when he attempted to manually clean a spice mill. This was a suit against the manufacturer. The milling system was designed and assembled by plaintiff's employer using component parts from defendants Micron and Bauermeister. The system incorporated an airlock device supplied by defendant Micron Powder Systems. The airlock device was not defective.

Plaintiff's complaint against defendant Micron did not allege "any defect in the airlock itself but rather a defect in the overall design of the mill in that it lacked an interlock system and a warning light." *Sperry I,* 786 F.Supp. at 1515. The court granted defendant Micron's motion for summary judgment because plaintiff did not allege in any way that the Micron airlock was defective. *Id.* at 1518. In the present case, Gabler alleged the hoist itself, a component part of the dumbwaiter system, was defectively designed and manufactured. Thus, *Sperry I* does not control here.

*Sperry v. Bauermeister, Inc.,* 804 F.Supp. 1134 (E.D.Mo.1992) (*Sperry II*) is also inappropriate. *Sperry II* involved the same set of facts as *Sperry I* except that it was directed against Bauermeister, the designer of the airlock. Plaintiff's allegations pertained to the design, assembly and installation of the milling system, not the component airlock. The court granted defendant Bauermeister's motion for summary judgment because plaintiff's case was based upon the premise that defendant was the designer of the mill system. "The evidence before the Court clearly shows that the defendant was not the designer, manufacturer, or installer of the entire mill system." *Sperry II,* 804 F.Supp. at 1139.

Gabler does not allege that Robbins & Meyers designed the dumbwaiter system. He alleges that Robbins & Meyers defectively designed and manufactured the hoist, which became a component part of the system. Thus, Robbins & Meyers' reliance on the *Sperry* cases is misplaced.

Without reaching the merits, we hold the trial court erred in granting summary judgment because there is a genuine issue of material fact as to whether the Robbins & Myers hoist was defective and unreasonably dangerous when manufactured and sold.

Reversed and remanded.

AHRENS, P.J., and SIMON, J., concur.