David BOYER, Plaintiff–Respondent/Cross–Appellant,

v.

BANDAG, INC., Cross–Appellant/Cross–Respondent.

No. 69463.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 4, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 23, 1997.

Application to Transfer Denied
May 27, 1997.

Thomas C. Walsh, Elizabeth C. Carver, Bryan Cave LLP, Joseph H. Mueller, Robyn G. Fox, Moser and Marsalek, P.C., St. Louis, for defendant–appellant/cross–respondent.

Paul E. Kovacs, Gary P. Paul, David G. Ott, Aaron I. Mandel, Brinker, Doyen & Kovacs, P.C., Clayton, for plaintiff–respondent/cross–appellant.

GERALD M. SMITH, Judge.

Defendant, Bandag, appeals from a judgment against it in the amount of $2.75 million in a products liability case. Plaintiff, David Boyer, cross-appeals from the trial court action in granting defendant's motion for directed verdict on a negligence count and denial of his punitive damages instruction. We reverse in part and affirm in part.

Plaintiff was severely injured when a tire on the truck he was using exploded while his face was in close proximity to or touching the tire. He had purchased the tire on behalf of his employer from Purcell Tire & Rubber Company of Potosi, Missouri, from that company's store in Viburnum. The stock of Purcell Tire is owned by Robert and Juanita Purcell. They are also the owners of the stock of Bowling Tire Company, Inc., of Paducah, Kentucky.

Bandag is an Iowa corporation which owns a patented process for recapping automobile and truck tires known as the "Bandag Meth-

od". It has 510 franchisees in various parts of the country who have signed the Bandag System Franchise agreement. The agreement allows the franchisees to buy rubber tread from Bandag, to utilize the Bandag method for recapping tires and to display the Bandag name within the franchise area. Bowling Tire is a franchisee of Bandag with a geographic operation area of five Kentucky counties and one Illinois county. In February 1985, the franchise agreement was amended to deal with a Bandag national warranty program. In all other respects the franchise agreement remained in full force and effect. The franchisee in the amended agreement was identified as "Bowling Tire Company, Inc. doing business as a corporation under the name of Purcell Tire Company" with an address in Paducah, Kentucky. No change was made in the franchisee's geographic operation area.

In 1984, it had come to Bandag's attention that retreaded tires bearing the DOT designation of Purcell Tire & Rubber Company of Potosi, Missouri, had been sold in Kansas with plainly visible Bandag logos on the running surface and side edge of the tread material. Bandag's patent and trademark counsel wrote to Robert Purcell, president of Purcell Tire & Rubber Company, at the Potosi address that use of the logo was a violation of the Bandag trademark as the holder of the DOT designation was not an authorized Bandag retreading location. In the letter counsel stated that he had never had to request authorization to institute legal action against a Bandag dealer or one of its associated companies to enforce proper trademark usage. Counsel requested written assurance that improper trademark usage would not reoccur and that "if there is any Bandag tread rubber run through your non-Bandag retreading operations that they [Purcell employees] are required to buff all of the Bandag logos before they use the material to retread tires." A week later counsel wrote to the vice-president of the Potosi Purcell company referring to a letter from the vice-president in which it was stated that the problem "has now been corrected as of August 11, 1984.... This means to me that there will be no more use of the Bandag trademark at any Purcell Tire retreading

shop not located within your franchised territory." A copy of that letter was sent to Robert Purcell.

The retreaded tire purchased by plaintiff which exploded had Bandag rubber for its tread. Plaintiff did not purchase the tire as Bandag retread and did not know it contained Bandag rubber until after the explosion. The rubber was in no way defective. The tire had been retreaded by Purcell Tire & Rubber Company of Potosi. The method used to retread was not the Bandag method but rather the Oliver method, which is an acceptable method of retreading. The Oliver method was regarded by the experts as a lesser quality method of retreading than the Bandag method. Plaintiff's expert testimony attributed the explosion to a defective bead which seals the tire to the rim and allows higher air pressure within the tire. The expert opined that the defect in the bead predated the mounting of the tire after retreading. The rubber did not directly relate to the accident and did not cause the bead problem or the explosion.

Plaintiff brought suit against Bandag and Purcell Tire & Rubber Company of Potosi. During trial he settled with Purcell for $1.25 million. The trial court directed a verdict for defendant Bandag on plaintiff's negligence count and punitive damages count. The jury returned a verdict for plaintiff and against defendant Bandag for $4 million, which was reduced to $2.75 million because of the Purcell settlement. These appeals followed.

■■■ Bandag contends that plaintiff failed to make a submissible case against it and the court erred in denying its motion for directed verdict and motion for judgment notwithstanding the verdict. In reviewing such a contention we view the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of all favorable inferences reasonably drawn from the evidence. We disregard defendant's evidence except to the extent it aids plaintiff's case. *Seidel v. Gordon A. Gundaker Real Estate Co., Inc.,* 904 S.W.2d 357 (Mo.App.1995)[1,2]. A directed verdict should be granted only when

reasonable persons could not differ on a correct disposition of the case. *Id.*

Sec. 537.760 RSMo 1994 provides:

Products liability claim defined

As used in sections 537.760 to 537.765, the term "products liability claim" means a claim or portion of a claim in which the plaintiff seeks relief in the form of damages on a theory that the defendant is strictly liable for such damages because: (1) The defendant, wherever situated in the chain of commerce, transferred a product in the course of his business; and (2) The product was used in a manner reasonably anticipated; and

(3) Either or both of the following:

(a) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or

(b) The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

In *Keener v. Dayton Electric Manufacturing Company,* 445 S.W.2d 362 (Mo.1969)[2] the court adopted as Missouri law strict liability pursuant to Restatement (Second) of Torts § 402A (1965) of persons engaged in the business of selling products for use or consumption. The policy rationale assumes that the manufacturer, by virtue of its close association to the product, is better situated to detect faults arising from the design or manufacture of the product than injured parties who are unable to protect themselves. *Jarrell v. Fort Worth Steel & Manufacturing Co.,* 666 S.W.2d 828 (Mo.App.1984)[2].

■ Comment (g) to § 402A of the Restatement states: "The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained." Plaintiff must demonstrate that the product was defective at the time it entered into the stream of commerce and that neither he nor any third person has made alterations to the product that would create a defect that could be the proximate cause of the damages incurred. *Gabler v. Robbins & Myers, Inc.,* 895 S.W.2d 79 (Mo.App.1995)[8–10]. Subsequent changes or alterations in a product do not relieve the manufacturer of strict liability if the changes were foreseeable and did not render the product unsafe. *Id.*

■ Missouri courts have consistently held that a manufacturer's liability is predicated upon the dangerous nature of the product at the time it leaves the hands of the manufacturer. *Keener v. Dayton Electric Manufacturing Company, supra* at [6]; *Bailey v. Innovative Management & Investment, Inc.,* 916 S.W.2d 805 (Mo.App.1995)[4,5]; *Gabler, supra* at [8–10]; *Klein v. General Electric Company,* 714 S.W.2d 896 (Mo.App.1986)[2]; *Lewis v. Envirotech Corp.,* 674 S.W.2d 105 (Mo.App.1984)[1]; *Racer v. Utterman,* 629 S.W.2d 387 (Mo.App.1981)[11]. Here the product placed in the stream of commerce by Bandag, the rubber, was not defective and did not cause the explosion. The method used to retread the tire was not the Bandag method, but a method unrelated to Bandag. Neither defective rubber of Bandag nor a defective method of retreading by Bandag caused the explosion and plaintiff's injuries.

Plaintiff cites us to *Gunderson v. Sani-Kem Corp.,* 674 S.W.2d 665 (Mo.App.1984) in support of his position. That case involved a subsequent supplier of a lubrication system for a piece of machinery which modified the product thereby creating an unreasonably dangerous condition which injured the plaintiff. The case supports liability of Purcell Tire & Rubber Company but does not support liability of Bandag.

■ Plaintiff seeks to impose liability upon Bandag on the basis that Purcell Tire & Rubber Company of Potosi was a franchisee of Bandag and pursuant thereto Bandag controlled or had the right to control Purcell. We are unable to find any franchisor/franchisee relationship between Bandag and the Potosi company. The franchise agreement is between Bowling of Paducah and Bandag

and grants a franchise to Bowling in five counties in Kentucky and one in southern Illinois. Bowling has no authority to operate in Missouri. The language in the amended franchise contract dealing with warranties which states that Bowling is operating under the name Purcell Tire Company does not utilize the same name as the Potosi company, Purcell Tire & Rubber Company. Given that Bowling was owned by the Purcells, it would not be at all remarkable that Bowling utilized the name Purcell in its operations in Paducah. The amendment did not change the geographic location of the franchise so it was not applicable to any operation in Potosi, and particularly not to one which did not purport to be a "Bandag method" operation.

Plaintiff also points to the language of the letter of counsel in which it is stated that "This means to me that there will be no more use of the Bandag trademark at any Purcell Tire retreading shop not located *within your franchised territory*." (Emphasis supplied). The letter was addressed to the Potosi company with copy to the owner of both the Potosi operation and the Paducah operation. The very purpose of the correspondence was to prevent the Potosi operation from utilizing the Bandag trademark and to advise the owner of the two companies that utilization of Bandag rubber obtained by Purcell in Potosi from Bowling without removing the Bandag logo was not permitted by the franchise agreement and the trademark protections available to Bandag. The letter simply reflects the existence of two different companies owned by the same people, one of which had a franchise with Bandag and one of which did not. It cannot be interpreted as acknowledging the existence of a franchise which the written contract clearly repudiates and which the Potosi company has never contended existed.

■ Finally, plaintiff premises the existence of a franchise upon an abandoned pleading in this litigation which premised indemnity from Purcell Tire & Rubber Company to Bandag upon a franchise. An abandoned pleading may be utilized for impeachment purposes as an admission against party interests but is not conclusive as to the fact alleged and is not a judicial admission. *Ev-*

*ans v. Eno*, 903 S.W.2d 258 (Mo.App. 1995)[4,5]; *Johnson v. Identification Inc.*, 716 S.W.2d 10 (Mo.App.1986)[2–4]. There was no franchise contract between the Potosi company and Bandag and the Potosi company did not purport to be a franchisee, did not use the Bandag method, and did not advertise itself as a Bandag franchisee. The evidence does not establish a franchise relationship between Purcell Tire & Rubber Company and Bandag.

■ During oral argument plaintiff seemed to premise liability of Bandag on a theory that it did not sufficiently police Bowling's actions in supplying Bandag rubber to Purcell Tire & Rubber Company in Potosi. We know of no authority which premises products liability upon such an absence to police. In *In re Temporomandibular Joint Implants Products Liability Litigation*, 97 F.3d 1050 (8th Cir.1996) the court rejected a claim premised upon a failure to warn the ultimate consumer where the manufacturer was aware of use of its product in load-bearing human implants and knew that the product when used in such fashion, no matter how the implants were designed, can disintegrate and cause injury to implant recipients. The manufacturer had advised the producer of the implant of the unsuitability of the product for implants and requested cessation of use for that purpose. Here the product of Bandag was not defective and would not cause injury when used in retreading of tires. Even the bases upon which the dissenting judge in the last cited case dissented are not present here. Additionally, in the absence of evidence that the only source of rubber for the Potosi company's retreading was Bandag (of which evidence there was none) or that without Bandag rubber Purcell would not have produced the retreaded tire which caused plaintiff's injury (of which evidence there was none) the failure of Bandag to police Bowling would not have been the proximate cause of plaintiff's injury.

Plaintiff further contends that Restatement (Second) of Torts § 400 applies here to impose liability on Bandag. No case in Missouri has adopted § 400. It provides that "One who puts out as his own product a chattel manufactured by another is subject to

the same liability as though he were its manufacturer." Bandag did not put out anyone's product as its own. Purcell conceivably could be considered to have done so, but not Bandag. That section is not applicable.

In view of our holdings, it is unnecessary to address the issues raised on plaintiff's cross-appeal.

The judgment against Bandag is reversed. The judgments entering a directed verdict on plaintiff's negligence claim and denial of a punitive damages instruction are affirmed.

CRANE, P.J., and PUDLOWSKI, J., concur.