**JIM LYNCH CADILLAC, INC.,
Plaintiff–Respondent,**

v.

**NISSAN MOTOR ACCEPTANCE CORPORATION, Defendant–Appellant.**

No. 65164.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 11, 1995.

trading in the 1990 Nissan 300ZX he had leased from Mallory Nissan just ten months earlier. Luster met with Neil Redeker, Jim Lynch's general sales manager. Because Nissan has a system for providing payoff amounts over the phone by inputting the leaseholder's lease number into the phone, Redeker had Luster call his wife to get the lease number for the 300ZX so they could find out the amount that would be required to pay it off. Luster gave the lease number he received from his wife to Redeker. Redeker then told the lease number to his assistant, Andrea Avery, and she transcribed it onto a Jim Lynch worksheet. The lease number entered on the worksheet was 01002121420.[1] Avery called Nissan's automated telephone service and entered 21420. She was given a payoff amount of $18,986.48. When she told Redeker the payoff was $18,986, both he and Luster stated that amount sounded too low. So Avery called back and spoke with an operator named Peggy. Avery provided the operator with Luster's name, the make and model of his car, his vehicle identification number (VIN), and the previously provided lease number of 21420. When the operator stated the payoff amount was $18,986, Avery asked her, "Are you sure this is correct?" Avery called a second time that day and spoke with a male operator. She provided the same information and received the same payoff, although she told the operator the amount did not seem correct.

On January 4, Redeker asked Patsy Marcavich, the business manager, to verify the payoff amount with Nissan. Marcavich called twice to verify the payoff amount. She spoke with operators named JoAnn and Ruby. She gave both operators Luster's name, VIN number, and the account number 21420. Both operators stated the payoff was $18,968 without indicating the account did not belong to Luster. She specifically asked the second operator to verify that the VIN number was correct, but the operator gave no indication the account she was referring to was for a different vehicle.

James F. Monafo, St. Louis, for appellant.

David L. Kreuter, Clayton, for respondent.

DOWD, Judge.

Defendant Nissan Motor Acceptance Corporation (Nissan) appeals from the trial court's judgment in favor of Plaintiff Jim Lynch Cadillac, Inc. (Jim Lynch) on its claims of breach of contract and negligent misrepresentation. We affirm.

On January 3, 1991, Scott Luster went to Jim Lynch to inquire about the possibility of

---

1. We have abbreviated Nissan's account numbers to their last five digits. Apparently, 21420 was actually the account number for a Linda Alexander, and Luster's account number was actually 21427.

On January 7, 1991, Redeker called Nissan himself and spoke with a payoff operator. He specifically asked the operator, "if we sent a check for $18,986.48, would they give us clear title to Scott Luster's 300ZX Nissan, serial number such and such." The operator stated that they would, and Jim Lynch closed a deal with Luster based on this payoff amount. Jim Lynch sent Nissan a check for $18,986 stating it was to pay off Luster's 300ZX, account number 21420. On January 14, 1991, Nissan sent a letter to Jim Lynch acknowledging its receipt of the check paying off *Linda Alexander's* account. After receiving this letter, Jim Lynch made several phone calls to Nissan and was told for the first time that the payoff on Luster's account was actually $31,142. Nissan refused to deliver title to Luster's 300ZX until Jim Lynch sent it another check for $12,783.42. Jim Lynch sent a letter to Nissan with the second check which contained Luster's name and Nissan's claimed lease number for Luster's account—21427. However, Nissan responded by sending the title to a car owned by Veronica Zotos, not Luster. After sending another letter to Nissan, Jim Lynch finally got the title to Luster's car.

Jim Lynch then filed suit against Nissan to recover the additional $12,783.42 it was required to pay for the title to Luster's car. Associate Circuit Judge Alan G. Harriss ruled in favor of Jim Lynch on its breach of contract and negligent misrepresentation claims and awarded it $12,783.42.[2] Nissan raises seven points of error on appeal.

■ In reviewing a court-tried case, we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We accept the evidence and inferences favorable to the judgment and disregard all contrary evidence. *Id.*

■ First, Nissan alleges there was insufficient evidence to establish that Nissan negligently represented to Jim Lynch that

the payoff on Luster's account was only $18,986. However, Nissan relies on a case which lists the elements of fraudulent misrepresentation, not negligent misrepresentation. *Eagle v. Swanger,* 787 S.W.2d 806, 809[7] (Mo. App.1990). Under Missouri law, Jim Lynch was required to show the following in order to establish its claim of negligent misrepresentation: (1) Nissan supplied information to Jim Lynch in the course of its business; (2) because of a failure by Nissan to exercise reasonable care or competence, the information was false; (3) the information was intentionally provided by Nissan for the guidance of a limited group, including Jim Lynch, in a particular business transaction; and (4) in relying on the information, Jim Lynch suffered a pecuniary loss. *Jacobs Mfg. Co. v. Sam Brown Co.,* 792 F.Supp. 1520, 1527[4] (W.D.Mo.1992). The main difference between fraudulent misrepresentation and negligent misrepresentation is that fraudulent misrepresentation requires proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false, while negligent misrepresentation only requires that the defendant failed to exercise reasonable care or competence to obtain or communicate true information. *Springdale Gardens v. Countryland Dev., Inc.,* 638 S.W.2d 813, 816[4] (Mo.App. 1982).

Nissan failed to exercise such reasonable care by repeatedly representing a false payoff amount on Luster's account, even after it was given Luster's name, VIN, and car make and model and was told that $18,986 did not seem correct. Point denied.

■ In Point II, Nissan alleges the trial court erred in ruling in favor of Jim Lynch on its negligent misrepresentation claim because Jim Lynch knew that any representation that Luster's payoff was $18,986 was false. However, Jim Lynch argues it could not know on its own that this figure was false because Jim Lynch could not calculate the payoff amount on its own and Nissan insisted that figure was correct. Redeker stated when Avery first called Nissan's automated

---

**2.** The associate circuit judge's decision may be appealed directly to this court pursuant to

§ 512.180, RSMo 1986.

service and received a payoff amount of $18,986, he had doubts about whether this amount was correct. Luster also told him that figure seemed low. However, this is why he had Avery call back and speak to a live operator. Representatives of Jim Lynch, including Redeker, called Nissan a total of eight times to verify the payoff amount. Redeker stated he specifically asked a Nissan representative, "if we sent a check for $18,986.48, would they give us clear title to Scott Luster's 300ZX Nissan, serial number such and such. And she said they would." He further stated even if he had obtained a copy of Luster's lease agreement, he would not have been able to calculate the payoff amount because only Nissan would have the particulars; and he did not fully understand all of the lease incentives which were available. Point denied.

In Point III, Nissan alleges the trial court erred in ruling in favor of Jim Lynch on its negligent misrepresentation claim because it had no right to rely on any representation by Nissan that the payoff amount was $18,986. Nissan relies on *Eagle v. Swanger* where this court stated, "if a party relies on representations which would ordinarily arouse the suspicions of one with ordinary prudence, or neglects means of information easily discoverable, he should bear the risk." 787 S.W.2d at 810. In response, Jim Lynch argues this test is inapplicable because *Eagle* deals with fraudulent misrepresentation rather than negligent misrepresentation, and the "right to rely" is not an element of negligent misrepresentation. However, in *B.L. Jet Sales, Inc. v. Alton Packaging Corporation,* 724 S.W.2d 669, 671[2] (Mo.App.1987), this court stated we should be guided by Restatement (Second) of Torts § 552 (1977) in considering negligent misrepresentation claims. Section 552(1) of the Restatement states:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to

exercise reasonable care or competence in obtaining or communicating the information. (Emphasis added.)

Therefore, Nissan can only be liable for negligent misrepresentation if Jim Lynch was *justified in relying* on the information negligently supplied.

Nissan argues Jim Lynch's reliance on the quoted figure was not justified because this figure would have aroused suspicions in a reasonably prudent person. Nissan also argues the court should not afford protection to Jim Lynch because it could have easily discovered the figure was false by: (a) asking Luster to verify his account number, (b) asking Nissan to verify Luster's account number, (c) asking Luster to obtain the payoff amount from Nissan himself, (d) asking to speak to a Nissan manager, or (e) calculating the payoff by referring to Luster's lease. We disagree. It was not unreasonable for Jim Lynch to fail to take any of these actions after Nissan representatives assured it the payoff amount on Luster's vehicle was $18,986. Further, Redeker testified he did not think he could calculate the payoff amount on his own by referring to Luster's lease because he was not familiar with all of the incentives offered with leases. Redeker also testified that in 95% of Jim Lynch's sales, only one phone call is needed to verify the payoff amount of the trade-in. Point denied.

In Point IV, Nissan argues there was insufficient evidence to establish it failed to exercise reasonable care in communicating the amount of Luster's payoff to Jim Lynch. In its judgment, the trial court found:

The Court further finds that the Defendant failed to exercise reasonable care or competence to obtain or communicate to the Plaintiff the true payoff amount, given the additional information provided by the Plaintiff and given the Plaintiff's repeated attempts to confirm the correct payoff.

Nissan alleges there was insufficient evidence to support this finding because Jim Lynch did not provide the correct lease number. However, Jim Lynch did provide Nissan with Luster's name, car make and model, and VIN. When Nissan operators said the payoff amount was $18,986, Jim Lynch's em-

ployees said that amount sounded suspicious. Further, Redeker specifically asked Nissan's operator, "if we sent a check for $18,968.48, would they give us a clear title to Scott Luster's 300ZX Nissan, serial number such and such." Point denied.

In Point V, Nissan alleges any contract which may have been formed between it and Jim Lynch was unenforceable under the Statute of Frauds because it involved the sale of goods over $500. § 400.2–201, RSMo 1986. Although Nissan mentioned the Statute of Frauds in its answer, it failed to raise this defense at trial. "Because [Nissan] failed to present a Statute of Frauds defense to the trial court, [it] is precluded from now asserting this theory on appeal." *Meremonte v. Jedwski*, 767 S.W.2d 124, 126[3] (Mo.App.1989). However, we review Nissan's point for plain error *ex gratia* and find it is without merit. Jim Lynch already paid Nissan $18,986 as it agreed to, and Nissan accepted this payment. Section 400.2–201(3)(c) states the Statute of Frauds is inapplicable with respect to goods for which payment has already been made and accepted. *See also, Morris v. Perkins Chevrolet, Inc.*, 663 S.W.2d 785, 787[3] (Mo.App. 1984) (holding partial payment of an oral contract took the contract out of the Statute of Frauds). Point denied.

In Point VI, Nissan alleges no contract was formed between it and Jim Lynch because there was no meeting of the minds during the parties' communications. Nissan admits Article 2 of the Uniform Commercial Code applies to this case because it involves a transaction in goods. "A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." § 400.2–204(1), RSMo 1986. Under Article 2, a true "meeting of the minds" is not required. *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 675 (Mo.App. 1988). The intent which we are concerned with is the parties' objective intent and what a reasonably prudent person would have been led to believe from the actions or words of the parties. *Id.* The trial court correctly found that a reasonably prudent person in Jim Lynch's position would have been led to believe Nissan agreed to accept $18,986 as the payoff for Luster's 300ZX. Point denied.

In its final point, Nissan alleges the trial court erred in ruling in favor of Jim Lynch on its breach of contract claim because it knew Nissan's promise to provide the title to Luster's 300ZX in exchange for $18,986 was a mistake. Nissan alleges it should be permitted to avoid the contract because it made a unilateral mistake, and Jim Lynch either knew Nissan had made a mistake or should have known it was a mistake because it was so obvious. *See, Matter of Estate of Hysinger*, 785 S.W.2d 619, 624 (Mo.App.1990). However, this claim is also not properly preserved for appeal.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.