**DEAN MACHINERY COMPANY,**
**Respondent,**

v.

**UNION BANK f/k/a Bannister**
**Bank, Appellant.**

**Nos. WD 61205, WD 61217.**

Missouri Court of Appeals,
Western District.

April 15, 2003.

Motion for Rehearing and Transfer to
Supreme Court Denied May 27, 2003.

Application for Transfer Denied
July 1, 2003.

Irvin V. Belzer, Kansas City, MO, for Appellant, Union Bank.

Frank Wendt, Kansas City, MO, for Appellant, Paula Wray and Defendant, PC Contractors, Inc.

Kurt S. Brack, Merriam, KS, for Defendant, Brotherhood Bank.

Michael H. Berman, Overland Park, KS, for Respondent, Dean Machinery.

Before: THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

ROBERT ULRICH, Judge.

Union Bank and Paula Wray ("Ms. Wray") appeal from judgment entered for Dean Machinery Company ("Dean Machinery") on Dean's claim and Ms. Wray's counterclaim following a judge-tried case. The judgment of the trial court is reversed.

### Factual and Procedural History

Dean Machinery is a Caterpillar equipment dealer with a location in Kansas City, Missouri. For over forty years, Dean has rented, sold, serviced, and sold parts for heavy construction equipment. In 1994, Dean Machinery began renting equipment to PC Contractors, Inc. ("PC Contractors"), an excavating business. Ms. Wray was the president, chief executive officer, and sole shareholder of PC Contractors. Dean Machinery's practice is to verbally conduct business with select customers by having them sign a continuing purchase order to avoid the need for having a salesperson obtain a signature on every rental agreement. PC Contractors executed a continuing purchase order with Dean Machinery around November 10, 1997.

At issue in this case are three pieces of equipment that PC Contractors began renting from Dean Machinery in late 1997

and early 1998. PC Contractors executed three separate documents, each entitled Memorandum of Agreement to Lease Equipment (collectively, the "Lease Agreement"), to rent a 963B Track Loader, a 416C Backhoe Loader, and a BRV32 Hydraulic Hammer (collectively, the "Equipment") from Dean Machinery.[1] The Lease Agreements provided that PC Contractors lease the Equipment from Dean Machinery for a minimum of six months. After that time, PC Contractors could continue using the Equipment as long as it paid rent to Dean Machinery. Dean Machinery issued monthly rental invoices to PC Contractors. PC Contractors was often delinquent or failed to make payments to Dean Machinery. In mid 1999, Dean Machinery contacted PC Contractors and demanded that it either return the Equipment and pay the past due rent or purchase the Equipment. Dean Machinery refused to finance the Equipment sale to PC Contractors.

PC Contractors did not have the cash or financing to purchase the Equipment. It contacted several financial institutions to obtain financing. None of these institutions would extend financing to PC Contractors. PC Contractors began working with SDI Capital Resources, Inc. ("SDI") to obtain financing for the Equipment. SDI is a high risk lender specializing in providing financing to businesses that are unable to qualify for financing from more conventional sources. PC Contractors submitted a "lease application" to SDI on October 25, 1999. SDI approved financing for PC Contractors on November 11, 1999, subject to SDI's inspection of the Equipment and PC Contractor's completion of all documentation. SDI sent a letter to PC Contractors on November 12, 1999,

requesting several things, among which was "proof of rental payments." PC Contractors was behind in its rental payments to Dean Machinery and could not establish a rental payment history.

Ms. Wray contacted Dean Machinery regarding SDI's request for additional documentation. At that time, PC Contractors issued a check to Dean Machinery for $41,104.15. The purpose of the check was a disputed issue at trial. Dean Machinery contended that the check represented three rental payments on the Equipment. It claimed that it cooperated with Ms. Wray to calculate the amount of past due rent and help her establish a rental payment history. On the same day that PC Contractors gave its check to Dean Machinery for the Equipment, however, Dean Machinery issued sales invoices for the Equipment to PC Contractors. The purpose of the sales invoices was also disputed at trial. Dean Machinery claimed that it issued the "sales invoices" as a favor to PC Contractors to help it obtain financing. It asserted that it never intended to transfer ownership of the Equipment to PC Contractors. Union Bank argued otherwise, claiming that PC Contractors' check to Dean Machinery was a down payment for the purchase of the Equipment. Union Bank claimed interest in the Equipment as a secured creditor of PC Contractors.

After December 30, 1999, Dean Machinery stopped sending PC Contractors rental invoices and began sending it sales invoices. Dean Machinery's internal records were changed to reflect that PC Contractors had purchased the Equipment. Prior to December 30, 1999, Dean Machinery's balance sheet had carried the Equipment as an asset. After December 30, 1999, the balance sheet carried the Equipment as a

---

1. The lease agreements were executed on January 13, 1998, April 7, 1998, and February 17, 1998 respectively.

machine receivable. None of PC Contractor's records or financial statements was changed to reflect the purchase of the Equipment. Between March and April 2000, SDI informed PC Contractors that it would not finance the purchase of the Equipment.

Union Bank made three loans to PC Contractors and took a security interest in its inventory, chattel paper, accounts, equipment, and general intangibles, including any after-acquired property. Additionally, Ms. Wray provided further security for the three loans by executing a personal guaranty of PC Contractors' debt to Union Bank. Union Bank's security interest is most senior and would take priority over PC Contractors' other creditors. In March or April 2001, PC Contractors went out of business. PC Contractors delivered all of its assets including the subject Equipment to Union Bank. Dean Machinery sent a letter to Union Bank on April 16, 2001, stating that it owned the Equipment. Union Bank did not give the Equipment to Dean Machinery. It set up an auction on August 30, 2001, to sell the Equipment. Dean Machinery sought and was granted a temporary restraining order to stop Union Bank's sale of the Equipment.

Dean Machinery filed an action in the Circuit Court of Jackson County, Missouri, seeking to recover the Equipment and the past due amounts owed to it by PC Contractors under the Lease Agreement. The case was tried without a jury on December 11, 2001. The trial court's judgment found that the Equipment belonged to Dean Machinery and that Union Bank had no "ownership interest or possessory rights" in the Equipment. The trial court also awarded damages to Dean Machinery for conversion and against PC Contractors, Union Bank, and Ms. Wray in the amount of $57,782. This appeal by Union Bank, and Ms. Wray (the "Appellants") followed.

Appellants raise four issues on appeal. In their first point, Appellants claim that the trial court erred in determining that PC Contractors had breached the Lease Agreement with Dean Machinery, that a sale of the Equipment to PC Contractors had not occurred, and granting judgment to Dean Machinery because the conditions for a sale of the Equipment had occurred under section 400.2–401, RSMo 1994, in that PC Contractors had possession of the Equipment when Dean Machinery issued sales invoices to PC Contractors. The Appellants claim in their second point that the trial court erred in granting judgment to Dean Machinery because the trial court's conclusion that the purpose of the second agreement between Dean Machinery and PC Contractors and attendant conduct of the two entities did not constitute a sale was against the weight of the evidence which reflected the unequivocal, plain, clear, and expressed intent of the two parties to transform the lease to a sale of the Equipment after December 30, 1999. In their third point, Appellants claim that the trial court erred in holding that PC Contractors and Union Bank unlawfully converted the Equipment because they did not exercise unauthorized assumption of the right of ownership over the Equipment in that PC Contractors had acquired ownership of the Equipment pursuant to section 400.2–401, RSMo 1994, and Union Bank's security interest attached to the Equipment which was after-acquired property of PC Contractors. Ms. Wray asserts as a fourth point on appeal that the trial court erred in entering judgment against her for unlawfully converting Dean Machinery's Equipment because the elements of conversion were not satisfied in that no evidence was presented that Ms. Wray had possession of the Equipment when Dean Machinery made its demand for surrender

and the undisputed evidence established that Dean Machinery had consented to Ms. Wray's possession of the Equipment, which was a complete affirmative defense to the conversion claim.

Before addressing the merits of the case, it is noted that this case presents some of the most convoluted business transactions to come before this court. Dean Machinery, PC Contractors, and SDI disregarded recognized and traditional business practices when they entered into the transactions that caused the dispute in this case. The sequence of events occurring during the second transaction between Dean Machinery and PC Contractors defy explanation. Dean Machinery claims that it never intended to sell the Equipment to PC Contractors. Rather, Dean Machinery contends that it intended to sell the Equipment to SDI. Yet, Dean Machinery issued sales invoices for the Equipment to PC Contractors. Why a company in business for as long as Dean Machinery would issue sales invoices to PC Contractors when it intended to sell the Equipment to SDI is bewildering. Dean Machinery also claims that it does not provide purchase money financing to its customers. The sales invoices issued to PC Contractors contained "open account" language, however, suggesting that Dean Machinery, does, in fact, provide purchase money financing to at least some of its customers. SDI's actions also defy rational explanation. Dean Machinery argued that it issued sales invoices to PC Contractors at SDI's directive. If SDI intended to purchase the Equipment, why would it request that the sales invoices be issued to another party? Moreover, SDI filed a financing statement asserting a security interest in the subject Equipment but never completed the transaction for which the financing statement was filed. The business practices presented in this dispute are not a model to be emulated.

## Standard of Review

Appellate review of a judge-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. Banc 1976). The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* In applying this standard, we review the evidence in the light most favorable to the judgment. *City of St. Louis v. Riverside Waste Mgmt., L.L.C.,* 73 S.W.3d 794, 796 (Mo.App. E.D.2002) (citing *Gesellschaft Fur Geratebau v. GFG Am. Gas Detection,* 967 S.W.2d 144, 146 (Mo. App. E.D.1998)). A judgment will not be reversed unless it is against the weight of the evidence, or it erroneously declares or applies the law. *Kennedy v. Kennedy,* 969 S.W.2d 310, 313 (Mo.App. W.D.1998). The "weight of the evidence" refers to the probative value of the evidence and not the quantity of the evidence. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht,* 25 S.W.3d 530, 536 (Mo.App. W.D.2000) (citing *In re Marriage of Lewis,* 808 S.W.2d 919, 922 (Mo.App. S.D.1991)). A judgment will be set aside on the ground that it is against the weight of the evidence only with caution and with a firm belief that the decree of judgment is wrong. *Hankins v. Hankins,* 920 S.W.2d 182, 186 (Mo.App. W.D.1996).

## Point I–Whether a Sale of the Equipment Occurred

Union Bank argues that a sale of the Equipment to PC Contractors occurred in December 1999. It claims that it is entitled to the Equipment because it has the most senior perfected security interest in the disputed Equipment. Union Bank claims that it is entitled to the Equipment because it properly perfected its security interest in PC Contractors' after-acquired

equipment and because Dean Machinery failed to file a financing statement with respect to the sale of the Equipment to PC Contractors. Dean Machinery counters that a sale of the Equipment never took place. Instead, Dean Machinery characterizes the transaction as a lease, with the understanding that PC Contractors would find a third party purchaser (e.g. SDI) to buy the Equipment from Dean Machinery and would then lease it back to PC Contractors. It contends that Union Bank's security interest did not attach to the Equipment because PC Contractors never had rights in the Equipment claimed as collateral.

The critical issue in this case is whether the transaction, which took place in December 1999, between Dean Machinery and PC Contractors, was a sale or a lease.[2] Depending upon whether the transaction was a lease or a sale, the next issue to be addressed is whether Union Bank's security interest attached to the Equipment. The third and final issue to be examined is whether Union Bank's security interest prevails over Dean Machinery's unsecured interest in the Equipment.

### A. Lease or Sale?

■ The documentation prepared in connection with the December 1999 transaction between Dean Machinery and PC Contractors was limited. Dean Machinery sent PC Contractors three sales invoices on December 30, 1999, one for each of the three kinds of machinery constituting the Equipment. Each sales invoice was titled "equipment sale" and contained a sales price for each item of machinery. Additionally, each sales invoice contained a provision with the following language:

Open accounts are for customer's convenience and payable on the terms indicated above. Title does not pass until receipt of payment.

A major dispute in this case is the effect of this provision on the transaction. Union Bank characterizes this provision as a reservation of title. It contends that a sale of the Equipment occurred notwithstanding Dean Machinery's attempt to retain title until PC Contractors paid for the Equipment. Dean Machinery claims that this provision has no effect on the transaction because it issued the sales invoices as a convenience to PC Contractors to help it obtain financing from SDI. Dean Machinery claims that despite its action it never intended to sell the Equipment to PC Contractors.

■ Section 400.2–401(2), RSMo 1994, governs sales where the seller attempts to reserve title and provides in pertinent part:

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading.

Title passes from the seller to the buyer, therefore, when the seller and buyer demonstrate the intent to effect a sale and the seller physically delivers the goods to the buyer irrespective of the fact that the contract states that title does not pass until receipt of payment. In this case, PC Contractors already had possession of the Equipment. Union Bank contends that a

---

**2.** Dean Machinery asserts that the critical question in this case is whether the lease agreement between Dean Machinery and PC Contractors was a true lease or a conditional sale. We disagree.

sale occurred upon Dean Machinery's issuance of the sales invoices to PC Contractors, thereby demonstrating the intent to sell, because PC Contractors already had possession of the Equipment.

■ Missouri law has not yet interpreted this provision of the Uniform Commercial Code ("UCC"). The purpose behind the UCC as adopted in Missouri is: "(a) to simplify, clarify and modernize the law governing commercial transactions;" and "(c) to make uniform law among the various jurisdictions." § 400.1–102(2)(a) and (c), RSMo 1994. "[W]here there is a paucity of Missouri case law interpreting a provision of the UCC, courts of this state look for guidance to decisions of other jurisdictions made under the same provision." *Robinson v. Citicorp Nat'l Servs., Inc.*, 921 S.W.2d 52, 54 (Mo.App. E.D.1996) (citing *Interco Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 261 (Mo.App.1976)). Union Bank cites *In re Communications Company of America, Incorporated,* 84 B.R. 822, 824 (Bkrtcy.M.D.Fla.1988), for the proposition that the issuance of a sales invoice transfers title and ownership to the buyer notwithstanding any language in the invoice which purports to retain title or ownership. The facts of the present case are remarkably similar to those in *In re Communications* in that both sales agreements contained provisions reserving title in the seller, both buyers failed to pay the entire purchase price for the equipment, and both buyers had possession of the equipment. *See id.* at 823–24. The *In re Communications* court relied on UCC § 2–401(2) to hold that the provision of the sales agreement purporting to reserve title in the seller only reserved a security interest in the equipment and, thus, the seller was not the owner of the equipment. *See id.* The *In re Communications* court held that the buyer was the owner of the equipment even though it did not pay the entire

purchase price of the equipment. *See id.* at 824.

■ Dean Machinery claims that it never intended to transfer title to the Equipment to PC Contractors. It argues that the issuance of a sales invoice, by itself, is insufficient to constitute a sale. "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." § 400.2–204(1), RSMo 1994. With Article 2, moreover, a "true meeting of the minds is not required." *Jim Lynch Cadillac, Inc. v. Nissan Motor Acceptance Corp.*, 896 S.W.2d 704, 709 (Mo.App. E.D.1995) (citing *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 675 (Mo.App.1988)). Instead, the "parties' objective intent and what a reasonably prudent person would have been led to believe from the actions or words of the parties" is considered. *Id.*

The objective evidence indicates that the December 1999 transaction between PC Contractors and Dean Machinery constituted a sale. PC Contractors treated the transaction as a sale by representing to SDI that it owned the Equipment by furnishing SDI with sales invoices for the Equipment. Dean Machinery contributed to the representations to SDI that a sale had occurred by providing the sales invoices to PC Contractors. Not only did Dean Machinery issue sales invoices to PC Contractors, it also performed conversion calculations to convert the Equipment from a lease to a sale, it reclassified the Equipment as a sale on its inventory control documentation, it began carrying the Equipment as a machine receivable on its financial statements, and its tax return documents reflected that the Equipment had been sold. Even after Dean Machinery learned that SDI financing had not been obtained, it continued to carry the

Equipment as a receivable on its books. Dean Machinery's most telling action occurred when it issued a demand letter to PC Contractors on November 29, 2000, demanding full payment of amounts due for the purchase of the Equipment. If Dean Machinery had never intended to sell the Equipment to PC Contractors, it would not have demanded payment of the purchase price from PC Contractors. Additionally, Bob Thomas, Assistant Treasurer of Dean Machinery, told David DeKemp, an accountant retained by PC Contractors, that the Equipment had been sold to PC Contractors. All of these factors are objective evidence that support the conclusion that the transaction between Dean Machinery and PC Contractors was a sale.

In addition to the evidence that a sale occurred, Dean Machinery's original and first amended pleadings were admitted at trial as an admission against the interest of the pleader. "[A]n abandoned pleading is generally not admissible in evidence except for use as an admission against the interest of the pleader." *Evans v. Eno*, 903 S.W.2d 258, 260 (Mo.App. W.D.1995) (citing *Johnson v. Identification, Inc.*, 716 S.W.2d 10, 13 (Mo.App. 1986)); *see also Boyer v. Bandag, Inc.*, 943 S.W.2d 760, 764 (Mo.App. E.D.1997). "Even under these circumstances, an admission in an abandoned pleading is not conclusive as to the fact alleged, and does not constitute a judicial admission." *Evans*, 903 S.W.2d at 260 (citing *Bledsoe v. Northside Supply & Dev. Co.*, 429 S.W.2d 727, 730 (Mo. banc 1968)). In its original petition, Dean Machinery filed an "open account" action against PC Contractors. In both its original and its first amended petition, Dean Machinery admitted that PC Contractors agreed to purchase the

Equipment. These admissions coupled with the objective evidence establish that a sale of the Equipment from Dean Machinery to PC Contractors took place.

Dean Machinery alternatively argues that section 400.2–401(2) does not apply when the parties agree otherwise. Section 400.2–401(2) begins with the phrase "[u]nless otherwise explicitly agreed . . . ." The term "explicitly" is not defined in the statute. "Absent a specific statutory definition, words used in a statute are given their plain and ordinary meaning." *State v. Conaway*, 824 S.W.2d 50, 53 (Mo.App. E.D.1991). The plain and ordinary meaning of a term is found in the dictionary. *State, Mo. Dep't of Soc. Servs. v Brookside Nursing Center, Inc.*, 50 S.W.3d 273, 276 (Mo. banc 2001) (citing *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999)). "Explicitly" is defined as "fully and clearly expressed or demonstrated; leaving nothing merely implied; unequivocal." Random House's Webster's Unabridged Dictionary 681 (2nd ed.2001). Although Dean Machinery claims that the parties had an explicit agreement that title to the Equipment would not transfer until the purchase price was paid in full, it fails to provide any support for this position. Testimony at trial regarding the transaction that took place in December 1999 established, moreover, that Dean Machinery intended to sell the Equipment to PC Contractors. The only unclear aspect when the sale occurred was which third party would finance the transaction.

Dean Machinery's reservation of title is subject to Article 9. A reservation of title does not, however, automatically bestow rights in the collateral.[3] Dean Ma-

---

**3.** One UCC commentator has addressed the effect of Article 9 on section 2–401(2) as follows:

If the seller and buyer have contractually agreed that the seller will retain title until the buyer has paid for the goods, the Code

chinery claims that it did not sell the Equipment to PC Contractors on a purchase money basis. The provision in the sales invoice stating that "open accounts are for customer's convenience" suggests otherwise. "Open account" is not defined in the sales invoice or in the statute. As noted, the plain and ordinary meaning of a term is to be derived from the dictionary. "Open account" is defined as "[t]ype of credit extended by a seller to buyer which permits buyer to make purchases without a note or security and it is based on an evaluation of the buyer's credit." Black's Legal Dictionary 1090 (6th ed.1990). Although Dean Machinery claims that it had no intention of selling the Equipment to PC Contractors on credit, by issuing a sales invoice with "open account" language, that is, in effect, what it did. *Barwell, Inc. v. First of Am. Bank–LaPorte,* 768 F.Supp. 1312, 1317–18 (N.D.Ind.1991) (holding that the seller sold goods on a purchase money basis even though seller claimed that it did not). Viewing all of the objective data, a reasonably prudent person would have been led to believe from the parties' actions that a purchase money sale occurred notwithstanding Dean Machinery's protestation that it never intended to sell the Equipment to PC Contractors when it issued the sales invoices. *Jim Lynch Cadillac,* 896 S.W.2d at 709.

To preserve its interest in the Equipment, Dean Machinery, having made a sale, had to file a financing statement. Failure to file a financing statement resulted in Dean Machinery being an unsecured creditor. Union Bank and PC Contractors had a security agreement that had been perfected by the appropriate filing that effected Union Bank's lien on all of PC Contractor's after-acquired equipment. Union Bank is, therefore, a secured creditor. The next question addressed is whether Union Bank's security interest attached to the Equipment.

## B. Whether Union Bank's Security Interest Attached to the Equipment and Prevails Over Dean Machinery's Unsecured Interest in the Equipment

■ Dean Machinery claims that Union Bank's security interest did not attach to the Equipment because PC Contractors had no rights in the Equipment in that it never paid for the Equipment. "Payment of the purchase price does not control when a buyer acquires rights in the collateral sufficient to support the attachment of its creditor's security interest." *Alpine Paper Co. v. Lontz,* 856 S.W.2d 940, 942 (Mo.App. E.D.1993) (citing *Union Fed. Sav. Bank v. INB Banking, Co. Southwest,* 582 N.E.2d 426, 430 (Ind.App.1991)). PC Contractors' failure to pay the purchase price is not determinative of whether it had rights in the collateral. Rather, the determining factor is whether PC Contractors had control over the Equipment. Most jurisdictions have held that in "litigation involving competition between a reclaiming seller and a secured creditor who asserts an after-acquired property interest, [the secured creditor has won when] the buyer has acquired possession of the goods, either actual or constructive." *Cent. Prod. Credit Ass'n. v. Hopkins,* 810 S.W.2d 108, 113 (Mo.App. S.D.1991). "[F]or a security interest to attach, a debtor must have some degree of control or authority over collateral placed in the

reduces the seller's interest to reservation of a security interest. This throws the seller into Article 9, and it must compete with the buyer's secured lender under the rules of that Article.... If the seller does not retain a security interest, it normally will have no rights in the goods once title passes.
William H. Henning, 13 Mo. Practice, Uniform Commercial Code Forms, 3d ed., Nov. 2002 pocket part, p. 75.

debtor's possession." *Id.* (citing *Crocker Nat'l Bank v. Ideco Div. of Dresser Indus., Inc.,* 839 F.2d 1104, 1109 (5th Cir.1988)); *Kinetics Tech. Int'l Corp. v. Fourth Nat'l Bank of Tulsa,* 705 F.2d 396, 399 (10th Cir.1983). Here, PC Contractors had possession of the Equipment and exercised control over it by using it in its business. For that reason, Union Bank's security interest attached to the Equipment. Article 9's maxim, "first in time, first in right," applies here. Union Bank's perfected security interest takes priority over Dean Machinery's unperfected interest in the Equipment.

The trial court's ruling that a sale of the Equipment never occurred is against the weight of the evidence. For that reason, point one of Union Bank's appeal is granted.

### Point II–Whether the Sales Invoices Contemplated that a Sale Took Place

■■■ In their second point on appeal, Appellants contend that the trial court's finding that no sale of the Equipment took place was against the weight of the evidence because a court is bound to enforce a contract as written in that the sales invoices were unequivocal, plain, and clear in expressing the parties' intent that a sale of Equipment take place on December 30, 1999. Appellants claim that the trial court erred in finding that the purpose of the sales invoices was to effect a continuing lease of the equipment because the terms of the sales invoices as well as the parties' intent unequivocally established that a sale of the Equipment took place. Dean Machinery counters that the purpose of the sales invoices was to help PC Contractors obtain third party financing to purchase the Equipment. It argues that a contract never took place because there was no "meeting of the minds" between Dean Machinery and PC Contractors.

■■■ The interpretation of a contract is a question of law. *Holbert v. Whitaker,* 87 S.W.3d 360, 362 (Mo.App. E.D.2002). Appellate review of a question of law is de novo. *Id.* No deference is given to the trial court's interpretation of the agreement. *Knipp v. Truck Ins. Exch.,* 857 S.W.2d 281, 284 (Mo.App. W.D.1993). The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. *Peterson v. Cont'l Boiler Works, Inc.,* 783 S.W.2d 896, 901 (Mo. banc 1990).

■■■ The critical question is whether Dean Machinery and PC Contractors intended a contract to arise from the sales invoices issued on December 30, 1999. The transaction in question involved a sale of goods and is governed by Article 2. Under section 400.2–204(1), RSMo 1994, a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. "Contract" is defined by the UCC as the total legal obligation which results from the parties' agreement as affected by [the UCC] and any other applicable rules of law. § 400.1–201(11), RSMo 1994. The UCC defines "agreement" as the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance. § 400.1–201(3), RSMo 1994. The essential elements of an enforceable contract are: (1) parties competent to contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Sanders v. Ins. Co. of North Am.,* 42 S.W.3d 1, 15 (Mo.App. W.D.2001) (citing *Hyatt v. Trans World Airlines, Inc.,* 943 S.W.2d 292, 296 (Mo.App. E.D.1997)).

■■■■ Dean Machinery contends that a contract never existed because "mutuali-

ty of agreement" or meeting of the minds between it and PC Contractors never occurred. Article 2 does not, however, require a "true 'meeting of the minds.'" *Jim Lynch Cadillac, Inc.*, 896 S.W.2d at 709. Rather, the objective theory of contracts is used. *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 675 (Mo.App. E.D.1988) (citing J. Calamari & J. Perillo, *Contracts*, § 2–13 at 44 (2nd ed.1977)). The objective theory stresses an outward manifestation of assent made by one party to the other party. *Id.* The parties' objective intent and what a reasonably prudent person would have believed from the actions or words of the parties is analyzed. *Jim Lynch Cadillac, Inc.*, 896 S.W.2d at 709; *see also Dickemann v. Millwood Golf & Racquet Club, Inc.*, 67 S.W.3d 724, 728 (Mo.App. S.D. 2002) ("[C]ourts look to the parties' objective manifestations of intent to determine whether there was a meeting of the minds that would form a valid contract."). What a person may have intended subjectively is not controlling. *Computer Network, Ltd.*, 747 S.W.2d at 675; *see also Fiegener v. Freeman–Oak Hill Health Sys.*, 996 S.W.2d 767, 771 (Mo.App. S.D.1999) (citing *McDaniel v. Park Place Care Ctr., Inc.*, 918 S.W.2d 820, 827 (Mo.App.1996)) ("A party's subjective intent is irrelevant."). "It is the actions and not the intentions or suppositions of the parties which determines whether or not there is a contract." *B–Mall Co. v. Williamson*, 977 S.W.2d 74, 78 (Mo.App. W.D.1998) (citing *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo.App.1995)). "Courts do not favor the destruction of agreements, but will, if feasible, construe agreements so as to carry into effect the reasonable intention of the parties." *Computer Network, Ltd.*, 747 S.W.2d at 674 (citing *Mag Const. Co. v. McLean County*, 181 N.W.2d 718, 721 (N.D.1970)); Calamari, *supra*, § 2–13 at 44 (2nd ed.1977).

In this case, "mutual assent" to purchase the Equipment was manifested. Regardless of PC Contractors' failed attempts to obtain third party financing, the December 30, 1999, sales invoices established that a sale of the Equipment to PC Contractors took place. Specifically, the sales invoices were for an equipment sale, contained a sales price, a directive to pay the sales amount, and indicated that the Equipment had been sold to PC Contractors. Dean Machinery claims that it never intended to sell the Equipment to PC Contractors and issued the sales invoices at SDI's request to assist PC Contractors obtain financing to purchase the Equipment. It contends that SDI intended to purchase the Equipment and lease it to PC Contractors. However, Dean Machinery issued the sales invoices to PC Contractors not to SDI. If Dean Machinery intended to sell the Equipment to SDI, it would logically have issued the sales invoices to SDI and not to PC Contractors. Additionally, as extensively discussed in point one, Dean Machinery's additional actions demonstrate that it considered the sale of the Equipment to PC Contractors to have taken place. PC Contractors also assented to the sale, evinced by acknowledgment of its receipt of the sales invoices and its presenting them to SDI as proof of the sale of the Equipment. A reasonably prudent person would have concluded from the actions of both parties that the Equipment was sold by Dean Machinery to PC Contractors. The weight of the evidence established that the sales invoices were intended to transfer ownership of the Equipment from Dean Machinery to PC Contractors. Point two of Union Bank's appeal is granted.

### Points III & IV–Whether the Equipment was Converted

 Points three and four both address conversion and will be considered

together. In its third point on appeal, Appellant Union Bank claims that the trial court erred in holding that PC Contractors and Union Bank unlawfully converted the Equipment because neither Union Bank nor PC Contractors exercised authorized assumption of the right of ownership in that under section 400.2–401, RSMo 1994, PC Contractors was the owner of the Equipment and, therefore, Union Bank's security interest attached to the Equipment. Appellant Ms. Wray submits the fourth point on appeal and claims that the trial court erred in entering judgment against her for unlawfully converting Dean Machinery's property because the elements of conversion were not present in that no evidence was presented that Ms. Wray had possession of the Equipment when Dean Machinery made its demand for its surrender. She contends that the overwhelming and undisputed evidence was that Dean Machinery consented to her possessing the Equipment, which is a complete affirmative defense to conversion.

 To recover under a theory of conversion, Dean Machinery must establish that it had a right to possession of the converted property at the time of the alleged conversion. *Simul Vision Cable Sys. P'ship v. Cont'l Cablevision of St. Louis County, Inc.,* 983 S.W.2d 600, 603 (Mo.App. E.D.1999). Conversion is "the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott, N.A.,* 8 S.W.3d 893, 899–900 (Mo.App. W.D.2000) (citing *Lappe and Assocs., Inc. v. Palmen,* 811 S.W.2d 468, 471 (Mo.App.1991)). It is a tort against the right of possession rather than against the right of title. *Mertz v. Blockbuster, Inc.,* 32 S.W.3d 130, 133 (Mo. App. E.D.2000) (citing *Auto Alarm Supply Corp. v. Lou Fusz Motor Co.,* 986 S.W.2d 467, 468 (Mo.App. E.D.1998)). Conversion

can be proved in three ways: (1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the owner's rights; or (3) by refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper. *Moore Equip. Co. v. Halferty,* 980 S.W.2d 578, 582 (Mo.App. W.D.1998) (citing *Minton v. Hill,* 944 S.W.2d 250, 253 (Mo.App. 1997), *rev'd on other grounds by Antle v. Reynolds,* 15 S.W.3d 762 (Mo.App.W.D. 2000)). Intent may be inferred from the facts and circumstances of the situation. *Mertz,* 32 S.W.3d at 133.

Here, the trial court found that Union Bank converted the Equipment by attempting to sell the Equipment at an auction. The trial court held that this constituted use and appropriation to use the Equipment in conflict with Dean Machinery's rights. The trial court also held that PC Contractors and Ms. Wray converted the Equipment by continuing to possess the Equipment and exercising control over it. As discussed under points one and two, a sale of the Equipment to PC Contractors occurred. PC Contractors owned the Equipment. As such, it could not convert that which it owned. Conversion is the unauthorized assumption of the right of ownership over the personal property of *another.* (Emphasis added). The Equipment no longer belonged to Dean Machinery. Similarly, Union Bank did not appropriate Dean Machinery's Equipment to its own use because Dean Machinery no longer owned the Equipment. Because PC Contractors owned the Equipment, Union Bank's after-acquired security interest attached to the Equipment. As the most senior secured creditor of PC Contractors, Union Bank had the right to sell the Equipment at auction. Contrary to the trial court's opinion, the elements of the second theory of conversion are not present in this case.

■ The elements of the third theory of conversion are also lacking. "[I]f possession was not acquired by a tortious taking or the possessor does not appropriate or use the property in a fashion to indicate a claim thereto adverse to the owner, then no evidence of a conversion exists until there is proof, first, that a proper demand for possession was made by the one who is entitled thereto, and second, that the possessor wrongfully refused delivery." *Glass v. Allied Van Lines, Inc.*, 450 S.W.2d 217, 221 (Mo.App. 1970). The trial court found that Union Bank, PC Contractors, and Ms. Wray refused to surrender possession of the Equipment after Dean Machinery demanded return of the Equipment. Dean Machinery's only demand to Ms. Wray and PC Contractors to return the Equipment occurred prior to the sale of the Equipment. At that time, Dean Machinery told Ms. Wray and PC Contractors the Equipment must be returned and past due rent paid, or it must be purchased. After the Equipment was sold to PC Contractors, Dean Machinery sent a letter requesting payment of the Equipment. The letter, notably, did not demand return of the Equipment. Even had the letter demanded return of the Equipment, that would not prove that PC Contractors or Ms. Wray converted the Equipment because, at that time, Dean Machinery was no longer the owner of the Equipment. PC Contractors was, thus, entitled to possession of the Equipment.

■ Not only was PC Contractors entitled to possession of the Equipment, Dean Machinery consented to PC Contractors' possession of the Equipment. Consent is a complete defense to a conversion claim. *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 597 (Mo.App. E.D.2000). "[When] an owner expressly or impliedly assents to or ratifies the disposition of his property, there can be no recovery for conversion, as there was no unauthorized conduct regarding the property of the owner." *Graves v. Stewart*, 642 S.W.2d 649, 650–51 (Mo. banc 1982). Dean Machinery impliedly assented to PC Contractors' and Ms. Wray's continued possession of the Equipment by allowing them to retain possession of the Equipment. Although Dean Machinery attempted to exercise self-help by repossessing the Equipment in late 2000, the attempt failed, and Dean Machinery made no other efforts to retrieve the Equipment. Dean Machinery did not assert ownership rights to the Equipment until it discovered that PC Contractors had gone out of business and all of its assets were seized by Union Bank.

On April 16, 2001, Dean Machinery sent a letter to Union Bank requesting return of the Equipment. Union Bank's refusal to deliver possession of the Equipment to Dean Machinery was permissible because Dean Machinery was no longer the rightful owner of the Equipment. Neither Ms. Wray nor PC Contractors was in possession of the Equipment when Dean Machinery sent the April 16, 2001, letter. Conversion of the property by either Ms. Wray or PC Contractors on April 16, 2001, was impossible because neither had possession of it. Union Bank, PC Contractors, and Ms. Wray did not convert the Equipment. Because Dean Machinery has failed to prove that it owned the Equipment, its claim for conversion cannot lie. The trial court's finding that Union Bank, PC Contractors and Ms. Wray converted the Equipment is against the weight of the evidence and is reversed.

For the reasons stated in the opinion, the trial court's judgment is reversed.

All concur.