Lois Jeanette **HOLBERT** & John **Holbert**, Respondents,

v.

Ralph **WHITAKER**, Appellant.

No. ED 80388.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 10, 2002.

Rehearing Denied Oct. 24, 2002.

Craig S. O'Dear, Jeremiah J. Morgan (co-counsel) Kansas City, for respondents.

GLENN A. NORTON, Judge.

Ralph Whitaker appeals a judgment finding that he breached his contract for the purchase of two tracts of the Holberts' farm. We affirm.

## I. BACKGROUND

The Holberts' farm was enrolled in a USDA Freedom to Farm Program, which provided cash subsidies for the crop base on the farm. The Holberts divided the farm into tracts for individual sale at auction. The bill of sale for the auction described each tract: certain tracts contained tillable land and others, including tracts 7 and 11, were pasture lands. It noted that the entire farm was enrolled in the farm program, but did not indicate which tracts included the farm's crop base. The bill of sale also stated that "[a]ll announcements made at the auction shall take precedence over any prior advertising, either oral or written."

Whitaker saw the bill of sale and went out to look at the Holberts' farm several times before the auction. He was particularly interested in pasture lands and hay ground at the time. He had no immediate plans to raise crops.

At the beginning of the auction, the auctioneer announced that the crop base would be prorated based on tillable acres on tracts 1, 4 and 5 only. Whitaker did not bid on tracts 1, 4, 5, or any of the tracts with tillable land. He was the successful bidder on tracts 7 and 11. After each successful bid, Whitaker signed a Memorandum of Real Estate Purchase, in which he agreed to purchase each tract "subject to ... restrictions of record and restrictions disclosed ..." At the end of

Mark Steven Wasinger, Hannibal, for appellant.

the auction, Whitaker and the Holberts signed Purchase Agreements relating to each tract. Each agreement provided that the sale was "subject to" the terms of the farm program.

After the auction, the Holberts sent letters to the buyers explaining the percentage of crop base allotted to each tract they purchased according to the allocation announced at the auction. Whitaker received letters for tracts 7 and 11, indicating that his share of crop base on each tract was 0%. The letters stated that the Farm Service Agency required both parties' signatures on the letters for its records and directed Whitaker to sign them. Whitaker refused to sign the letters. He claimed that the local FSA office told him that he was not required to sign. Whitaker claimed that the FSA told him that if he did not sign, then a committee would decide how the crop base was allocated and, under their designation, tracts 7 and 11 might receive a share of the crop base.

The Holberts filed a petition alleging that Whitaker had breached the contracts by failing to execute the letters and requested that the contracts be declared null and void. Whitaker filed a counterclaim alleging that the Holberts breached the contracts and caused him damages. Among other documents, the bill of sale, a transcript and videotape of the auction announcements, the Memorandums, the Purchase Agreements, the farm program regulations and the Holberts' letters were admitted into evidence at the bench trial.

The trial court found that the Memorandums and Purchase Agreements constituted the parties' written contracts. The court concluded that the contracts were ambiguous as to the restrictions disclosed at the time of the auction and as to the terms of the farm program. The court resolved the ambiguity by reference to parol evidence, which it concluded showed

that Whitaker was required to sign the letters to effectuate allocation of the crop base. By refusing to sign them, Whitaker breached the contract. The court ordered that the contract was rescinded and entered judgment in the Holberts' favor on their claim and on Whitaker's counterclaim.

## II. DISCUSSION

On review of this court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Lake Cable, Inc. v. Trittler*, 914 S.W.2d 431, 434 (Mo.App. E.D.1996). The interpretation of this contract is a question of law that we review *de novo*. *Leventhal v. Trustmark Ins. Co.*, 39 S.W.3d 46, 50 (Mo. App. E.D.2001).

### A. Breach of Contract by Whitaker

In Points I, II, III and V, Whitaker argues that the terms of these contracts are wholly contained in the Purchase Agreements alone, which are unambiguous and do not obligate Whitaker to waive participation in the farm program. In fact, he contends, no written agreement sufficient under the statute of frauds exists showing any such obligation. The Holberts argue that extrinsic evidence was properly considered to make certain the incomplete and ambiguous terms of the Purchase Agreements and show that, consistent with the written terms, Whitaker intended to buy two tracts with no crop base. Because these points overlap and are dispositive of each other, we discuss them together.

■ The parties agree that the Purchase Agreements are at least part of the written documentation of their contracts. These Purchase Agreements contain the essential terms of this real estate contract—parties, subject matter, price, consideration and promises upon both sides— and are signed by Whitaker. These writings satisfy the statute of frauds. *See Peet v. Randolph,* 33 S.W.3d 614, 619 (Mo.App. E.D.2000); section 432.010 RSMo 2000. From these writings, it is unclear whether Whitaker has agreed to the designation of crop base to tracts 1, 4 and 5, and not to tracts 7 and 11. But a writing need not contain every term of the agreement to satisfy the statute of frauds, and indefinite terms may be clarified by reference to extrinsic evidence. *Peet,* 33 S.W.3d at 619.

■ "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). Where the parties have expressed their final and complete agreement in writing and there is no ambiguity in the contract, the intent of the parties must be determined solely from the four corners of the contract itself. *Mid Rivers Mall, L.L.C. v. McManmon,* 37 S.W.3d 253, 255 (Mo.App. E.D.2000). A complete and unambiguous writing cannot be varied or contradicted by extrinsic evidence. *State ex rel. Missouri Highway and Transp. Com'n v. Maryville Land Partnership,* 62 S.W.3d 485, 489 (Mo.App. E.D.2001).

■ We agree with Whitaker that the Purchase Agreements are not ambiguous. Therefore, *contradictory* terms cannot be added to the agreements by parol evidence. *Id.* But that does not mean that extrinsic evidence cannot be used to demonstrate terms *consistent* with the terms in the Purchase Agreements. If a written agreement omits a consistent additional term that might naturally have been omitted under the circumstances, then the agreement is considered only partially integrated and collateral facts and circumstances may be introduced to prove consistent additional terms. *Id.* Moreover, multiple documents executed at the same time and relating to the same subject may be construed together to determine the parties' intent. *See Greenberg v. Dowdy,* 930 S.W.2d 512, 514 (Mo.App. E.D.1996).

The Purchase Agreements are not complete on their face. First, they state that the sale is "subject to" the terms of the farm program. Without reference to the farm program regulations, it is impossible to know what other terms attend this sale. The farm program regulations provide that when tracts of a farm are sold, the transferring owner may request that the county committee divide the allotments of crop base among the various tracts in a manner designated by the farm owner subject to certain conditions. Reconstitution of Farms, Allotments, Quotas and Acreages, 7 C.F.R. sec. 718.205(c)(1) (2001). One condition is that the transferring owner and transferee must file a signed written memorandum of understanding of the designation. Section 718.205(c)(4). If the conditions are not met, then the owner's designation cannot be used and the committee will prorate the allotments. *See* section 718.205(c)(2).

Second, the Holberts' designation under these regulations is not contained in the Purchase Agreements. The auctioneer's announcement clarified that tracts 7 and 11 were not designated to receive any crop base. This announcement trumped all prior statements, including any inference from the bill of sale that every tract on the farm would receive a crop base. The Memorandums Whitaker signed immediately after successfully bidding on tracts 7

and 11 show that he intended to buy these tracts subject to this announcement—a "restriction disclosed." Although Whitaker claimed not to remember whether he had heard this announcement at the auction, he has never contended that when he agreed to purchase tracts 7 and 11, he believed they would include a crop base. Moreover, Whitaker bid only on tracts 7 and 11 and one other tract with no tillable land, and stated that his immediate intention was to raise hay and cattle, not crops, on the land he purchased.[1]

From reference to this extrinsic evidence, none of which contradicts any written terms of the Purchase Agreements, we find that Whitaker agreed to the designation of the crop base allocation and intended to buy two tracts of land with no crop base allotment. The Holberts' letters simply asked Whitaker to confirm his agreement and were necessary to complete the sale that the parties' intended—the sale of tracts 7 and 11 without a crop base. The letters did not, as Whitaker characterizes them, ask him to forever waive participation in the farm program—he had no entitlement to participation in the program to waive. Whitaker is trying to get something he has not bargained for, and that, in fact, the buyers of tracts 1, 4 and 5 *have* bargained for.

We find no error in the court's conclusion that Whitaker's refusal to sign these letters was a breach and warranted rescission of the contract. A correct result will be affirmed even if the trial court gave wrong or insufficient reasons for its judgment. *Business Men's Assur. Co. of America v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999); *Harvey v. Village of Hillsdale,* 893 S.W.2d 395, 398 (Mo.App.

E.D.1995). Here, we affirm because there are writings sufficient to satisfy the statute of frauds and, after referring to extrinsic evidence to supplement the incomplete writings with consistent terms, it is clear that the parties intended for Whitaker to purchase tracts 7 and 11 with no crop base allotment. It does not matter, therefore, that the court may have erred in concluding that the Memorandums were actually part of the contract and that the contracts were ambiguous.

Points I, II and III are denied.

Having found no ambiguity in the contracts, Whitaker's Point V—asserting that any ambiguity should have been construed in his favor—is denied.

## B. Breach of Contract by the Holberts

 Rescission of a contract extinguishes it and restores the parties to the positions they occupied before the contract was executed. *Medicine Shoppe Intern., Inc. v. J-Pral Corp.,* 662 S.W.2d 263, 270 (Mo.App. E.D.1983). It is as if the contract had never been made. *Id.* Whitaker cannot recover for breach of a contract that has been rescinded. The trial court did not err in refusing to award Whitaker damages on his counterclaim.

Point IV is denied.

## III. CONCLUSION

The judgment is affirmed.

WILLIAM H. CRANDALL, P.J., and SHERRI B. SULLIVAN, J., concurring.

---

1. To prove damages on his counterclaim, Whitaker introduced evidence that after the sale he bought equipment for cutting hay and considered buying cattle. These acts are consistent with Whitaker's understanding that the tracts he bought were not allotted a crop base and with the fact that he did not intend to raise crops.