

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

DONALD ROSENFELD, and )
LYNNE ROSENFELD ) No. ED100165
 )
          Respondent, ) Appeal from the Circuit Court
 ) of St. Louis County
vs. )
 ) Honorable Steven H. Goldman
DEBORAH J. BONISKE, )
 )
          Appellant. ) FILED: June 24, 2014

### Introduction

Appellant Deborah Boniske ("Boniske") appeals from the trial court's judgment in favor of Respondents Donald and Lynne Rosenfeld ("the Rosenfelds") on their Petition for Declaratory Judgment and Refund of Earnest Money Deposit and against Boniske on her counterclaim for breach of contract. Boniske alleges the trial court erred when it considered terms of an oral agreement between herself and the Rosenfelds that either added to or varied the terms of the fully integrated written agreement entered into by the parties. Boniske further claims the trial court erred in entering an alternative finding that the contract might be voidable under the doctrine of mutual mistake. Because mutual mistake was not presented to the trial court as a theory of recovery, mutual mistake may not form the basis of any judgment allowing rescission of the contract by the Rosenfelds. Because the trial court misapplied the law by considering evidence

1

of an oral agreement in violation of the parol evidence rule, we reverse the judgment of the trial court, enter judgment in favor of Boniske on both Rosenfelds' claims and on Boniske's counterclaim, and remand this matter to the trial court for a determination of Boniske's damages.

<u>Factual and Procedural History</u>

Viewed in the light most favorable to the judgment, the following evidence was adduced at trial: In 2011, Boniske listed her home at #30 Westwood Country Club Grounds for sale. The Rosenfelds, who lived in the same neighborhood, saw the for sale sign in Boniske's yard and expressed interest in purchasing her home. Because Lynne Rosenfeld suffered from lymphoma, the Rosenfelds wished for their interest in Boniske's home to remain confidential. Donald Rosenfeld feared that if their interest in selling their home and buying Boniske's home became public, people might speculate about Lynne Rosenfeld's health. Before submitting an offer, Donald Rosenfeld asked Boniske for her word that no one would know the Rosenfelds were attempting to buy her house and sell theirs. Boniske assured Donald Rosenfeld that he had nothing to worry about.

Donald Rosenfeld drafted the sale contract that he submitted to Boniske.[1] The proposed sale contract, signed by the Rosenfelds on October 22, 2011, provided a total sale price of $675,000 for the home at #30 Westwood Country Club Grounds. The sale contract further provided that the Rosenfelds would pay $10,000 as an earnest money deposit and that the closing date would be February 17, 2012. A section of the sale contract titled "General Closing Conditions and Sales Practices" included a provision stating: "This is the entire contract and neither party shall be bound by representation as to value or otherwise unless set forth in [the] contract."

---

[1]Donald Rosenfeld has worked off and on as licensed real estate broker for more than 40 years, while Lynne Rosenfeld is a licensed real estate agent.

2

The proposed sale contract also included a page titled "Special Agreements for the Purchase of #30 Westwood Country Club Grounds," which included four special agreements. Special Agreement No. 1 stated that the $10,000 earnest money deposit shall be conveyed to the title company within 24 hours of the Rosenfelds' receipt of the fully executed contract. Special Agreements No. 2 through No. 4 provided for a feasibility contingency. Under those special agreements, the Rosenfelds had until January 25, 2012, to conduct a feasibility study of the property. If they were dissatisfied with the feasibility study and notified Boniske by January 25, 2012, the contract would be null and void and they would be entitled to a return of their $10,000 earnest money deposit.

Boniske did not accept the Rosenfelds' offer and instead submitted Counteroffer No. 1. Counteroffer No. 1 stated that it was a counteroffer "To Sales Contract dated Oct. 22, 2011, by Donald Rosenfeld and Lynne Rosenfeld, His wife for property at 30 Westwood Country Club." Counteroffer No. 1 changed the sale price to $760,000 and replaced the feasibility contingency in Special Agreements No. 2 through No. 4 with a provision that the contract was contingent upon the Rosenfelds entering into a contract for the sale of their current residence on or before January 25, 2012. If no contract was entered into by that date, the Rosenfelds had the option to notify Boniske that the contract was null and void. If the Rosenfelds notified Boniske that the contract was null and void, Boniske was to notify the title company to return the Rosenfelds' earnest money.

The Rosenfelds did not accept Counteroffer No. 1 but rather submitted Counteroffer No. 2. The only change between Counteroffer No. 2 and Counteroffer No. 1 was the sale price, which was decreased to $730,000. Boniske did not accept Counteroffer No. 2, but submitted Counteroffer No. 3, which increased the sale price to $740,000. The Rosenfelds accepted Counteroffer No. 3 on November 10, 2011. Upon their acceptance of Counteroffer No. 3, the

3

Rosenfelds gave Boniske the $10,000 earnest deposit to convey to the title company pursuant to Special Agreement No. 1.

Prior to signing the sales contract, Donald Rosenfeld told Boniske that he and his wife could not and would not sign the contract unless they had her assurance that no one would know they were attempting to buy her house and sell their house. Boniske said she would comply and that the Rosenfelds had nothing to worry about. Donald Rosenfeld also told Boniske that he was aware of one person who wanted to buy his home. The parties' agreement to keep the transaction quiet was not reduced to writing.

After signing the sales contract, Donald Rosenfeld personally contacted Richard Fisher ("Fisher") about purchasing the Rosenfelds' home. The Rosenfelds did not speak to Fisher prior to signing the sales contract with Bonikse, but had heard from a third party that Fisher was very interested in their home. However, Fisher was not interested in purchasing the Rosenfelds' residence at that time. Donald Rosenfeld next contacted Kevin Manning ("Manning") about purchasing his home. Manning previously had expressed interest in the Rosenfelds' home, but had no current interest in buying the property. Donald Rosenfeld then approached Jeffrey Steinback ("Steinback"), who had previously built two houses in the same neighborhood. Steinback told Donald Rosenfeld that he was no longer in the real estate business but gave Donald Rosenfeld's phone number to one of his contacts. No contract resulted from Donald Rosenfeld's discussions with Steinback. The Rosenfelds also considered subdividing their property into two lots in order to enhance marketability; however, an ordinance prohibited them from doing so. Finally, the Rosenfelds contacted Trish Kolbrener ("Kolbrener"), a real estate agent, to see if she knew of anyone who might be interested in their home. Kolbrener told Lynne Rosenfeld that the market was weak at that time and she did not know how much interest she could generate in the home. The Rosenfelds did not list their home with Kolbrener, and

4

Kolbrener did not find a buyer for the Rosenfelds' home. The Rosenfelds also never listed their home on the MLS or put a for sale sign in their yard.

In January 2012, the Rosenfelds informed Boniske that they had not entered into a contract for the sale of their residence and, therefore, pursuant to the contingency provision, the contract was null and void. In response, Boniske argued that the Rosenfelds failed to make a reasonable effort to market their property and, thus, were in breach of contract by refusing to go forward with the sale. As a result, Boniske noted she was entitled to keep the earnest money deposit.

On January 26, 2012, the Rosenfelds filed a Petition for Declaratory Judgment and Refund of Earnest Money Deposit. The Rosenfelds alleged that the contract was silent as to any effort or activity to be undertaken by them in marketing their home, and that Boniske understood the Rosenfelds intended to contact only people who had previously expressed an interest in purchasing their home. Despite the Rosenfelds' efforts, the contingency was unable to be satisfied. The petition alleged that, at that point, the contract became null and void, and the Rosenfelds were entitled to an immediate refund of their earnest money deposit.

Boniske filed a counterclaim for breach of contract claiming, *inter alia*, that the contingency in the contract created an implied obligation on the part of the Rosenfelds to use reasonable efforts to attempt to obtain a contract for the sale of their home. Boniske alleged that the Rosenfelds' failure to use reasonable efforts to sell their home constituted a waiver of the contingency. Boniske sought damages for breach of contract as well as costs.

Prior to trial, Boniske filed a motion for partial summary judgment, which was granted by the trial court. The trial court held that the contingency in the contract imposed upon the Rosenfelds an obligation to use reasonable efforts to obtain a contract on their residence if they wished to declare the contract null and void.

5

A bench trial was held on the matter on May 6 and May 7, 2013.  In its Findings of Fact, Conclusions of Law, and Judgment, the trial court stated the following: (1) the parties entered into a binding contract for the purchase and sale of #30 Westwood Country Club Grounds, which was contingent upon the Rosenfelds entering into a contract for the sale of their current residence; (2) the Rosenfelds were credible with respect to their testimony that the transaction was to be considered confidential; (3) the testimony of Boniske was not credible when she denied there was an agreement to keep the transaction confidential; (4) Boniske "may not have understood that the agreement was part of the contract, but she accepted the term.  Therefore, there may be a mutual mistake which renders the contract voidable"; (5) the Rosenfelds were required to make reasonable efforts to market their home, which implies a duty of good faith and fair dealing; (6) the Rosenfelds met this requirement *only because of the extrinsic agreement that the transaction remain confidential* (emphasis added).  In considering the extrinsic oral agreement that the transaction was to remain confidential, the trial court noted that parol evidence could be considered where a written agreement omits a consistent additional term.  The trial court then concluded that the parties' agreement to keep the transaction confidential was not inconsistent with the contract, and would be considered by the court as part of the sales contract because there was no language in the contract regarding the efforts required by the Rosenfelds to satisfy the contingency.

Because the contract was properly terminated in accordance with the contingency, the trial court found that the Rosenfelds were entitled to a refund of their earnest money deposit and Boniske was not entitled to damages.  Judgment was entered in favor of the Rosenfelds on their petition for declaratory judgment and against Boniske on her counterclaim for breach of contract.

This appeal follows.

6

In her first point on appeal, Boniske argues that the trial court erred in entering judgment for the Rosenfelds on their claim for declaratory judgment and on Boniske's counterclaim for breach of contract. Specifically, Boniske reasons that the trial court erred in considering parol evidence relating to a separate oral agreement to maintain the confidential nature of the transaction because the parties had a fully integrated written agreement. In her second point on appeal, Boniske avers that the trial court erred in entering its alternative finding that the contract might be voidable under the doctrine of mutual mistake. Boniske contends that mutual mistake was never presented as a cause of action to the trial court and, even had it been, the theory of mutual mistake does not apply to the facts of this case.

## Standard of Review

Our standard of review in a court-tried case is governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. We accept as true the evidence and reasonable inferences therefrom that may be drawn in the light most favorable to the judgment, disregarding contrary evidence and inferences. Cooper v. Murphy, 276 S.W.3d 380, 383 (Mo. App. E.D. 2009).

## Discussion

**I.  The trial court erred in considering evidence of the parties' alleged oral agreement.**

Boniske's first point on appeal focuses on the trial court's decision to consider testimony regarding an alleged oral agreement by the parties to keep the transaction confidential. Boniske argues that the written sales contract between the parties was a fully integrated contract and, therefore, the trial court erred when it considered evidence of an oral agreement to add to or vary the terms of the written agreement. We agree.

7

"In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous, final, and complete writing." Poelker v. Jamison, 4 S.W.3d 611, 613 (Mo. App. E.D. 1999). The parol evidence rule is based on the premise that a written document is more reliable and accurate than fallible human memory. Id. The parol evidence rule is "not a rule of evidence focusing on the probative reliability and trustworthiness of proffered oral evidence," but rather "a substantive rule that limits the evidence from which inferences may be drawn . . . ." Id. If extrinsic evidence is received in spite of a final and complete contract, with or without objection, it violates the parol evidence rule and may not be considered. Id.

It is not disputed that the parties entered into a written agreement for the sale and purchase of #30 Westwood Country Club Grounds. The Rosenfelds allege an additional oral promise existed to maintain the confidentiality of the transaction. Whether the trial court properly included the additional oral promise as part of the sales agreement between the parties depends upon whether the parol evidence rule applies.

Before applying the parol evidence rule, a court first must determine whether a contract is integrated. State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land P'ship, 62 S.W.3d 485, 489 (Mo. App. E.D. 2001). "A written agreement is integrated if it represents a final expression of one or more terms of the agreement." Id. To determine whether a writing is integrated, we look to the face of the document itself without considering the surrounding facts and circumstances. Id. at 489. If the document appears to be a complete agreement on its face, it is conclusively presumed to be the final and complete agreement between the parties. Jake C. Byers, Inc. v. J.B.C. Investments, 834 S.W.2d 806, 812 (Mo. App. E.D. 1992). When a written contract is a completely integrated agreement, the parol evidence rule precludes even consistent additional terms within its scope from consideration. Maryville Land P'ship, 62 S.W.3d at 489

8

(citing Centerre Bank of Kansas City v. Distributors, 705 S.W.2d 42, 51 (Mo. App. W.D. 1985); Restatement (Second) Contracts, § 209); see also Mid Rivers Mall, L.L.C. v. McManmon, 37 S.W.3d 253, 255 (Mo. App. E.D. 2000) ("Where the parties have expressed their final agreement in writing and there is no ambiguity in the contract, the parol evidence rule requires that the court determine the intent of the parties solely from the 'four corners' of the contract itself.").

The parol evidence rule is particularly applicable where the writing contains a merger or integration clause. Union Elec. Co. v. Fundways, Ltd., 886 S.W.2d 169, 170-71 (Mo. App. E.D. 1994). "Merger clauses are express statements of the merger doctrine and are intended to prevent extrinsic evidence of other agreements from influencing the interpretation of a final written contract, preserving the sanctity of written contracts." Johnson ex rel. Johnson v. JF Enterprises, LLC, 400 S.W.3d 763, 768-69 (Mo. banc 2013). Where the contract contains an integration or merger clause, the "law conclusively presumes all prior and contemporaneous agreements have been merged into a written contract." Jennings v. SSM Health Care St. Louis, 355 S.W.3d 526, 532 (Mo. App. E.D. 2011) (citation omitted). The presence of a merger clause in a contract "announces and demonstrates the all-inclusive nature of the written instrument and furnishes additional reason for applying the parol evidence rule." Union Elec. Co., 886 S.W.2d at 171 (citation omitted).

Upon reviewing the written sales agreement at issue, we find a plain and clear intention of the parties to create a complete and final expression of their agreement. This intent is evidenced by the writing displayed on the face of the document. The contract unambiguously identifies the parties; gives a description of the property; states the sale price; states the special agreement that the Rosenfelds would pay a $10,000 earnest money deposit; and states that the contract was contingent upon the Rosenfelds entering a contract for the sale of their current residence. Moreover, critical to our finding that the sales contract is a fully integrated agreement

9

is the presence of an express merger clause stating that the writing "is the entire contract and neither party shall be bound by representation as to value or otherwise unless set forth in [the] contract." Because the contract contains a merger clause, we must presume that all prior and contemporaneous agreements between the Rosenfelds and Boniske were merged into the written contract and that the written contract is the final memorial of the parties' agreement. See Jennings, 355 S.W.3d at 532. The written contract is void of any terms relating to maintaining the confidentiality of the transaction.

Because the written contract was completely integrated, the trial court erred when it considered evidence of the alleged prior oral agreement between the parties to maintain the confidentiality of the transaction, even if the trial court deemed the oral agreement to be an additional consistent term. Maryville Land P'ship, 62 S.W.3d at 489. The trial court is correct that, in some circumstances, a written agreement may be considered partially integrated if the agreement omits a consistent additional term that might naturally have been omitted. Holbert v Whitaker, 87 S.W.3d 360 (Mo. App. E.D. 2002). In such cases, the trial court may consider parol evidence because the agreement is not fully integrated. However, the trial court's reliance on Holbert is misguided because, unlike here, the Purchase Agreements in that case were incomplete on their face. Id. at 363. Here, the contract, on its face, is a complete, fully integrated document. Therefore, Holbert is inapposite and provided no guidance to the resolution of this case. The trial court's error is undeniable as the trial court expressly states in its judgment that the Rosenfelds met their requirement of good faith and fair dealing *only because of the extrinsic agreement that the transaction remain confidential*. The trial court misapplied the law when, despite the existence of a completely integrated written contract, it relied upon parol evidence of the alleged prior oral agreement to enter judgment in favor of the Rosenfelds. See Murphy, 536 S.W.2d at 32.

10

Point One is granted.

## II. The trial court erred in entering the alternative finding that the contract might be voidable under the doctrine of mutual mistake.

In her second point on appeal, Boniske claims that the trial court erred in making an alternative finding that the contract might be voidable under the doctrine of mutual mistake because mutual mistake was never presented as a cause of action to the trial court and the doctrine of mutual mistake does not apply to the facts of this case.

In its Findings of Fact, Conclusions of Law, and Judgment, the trial court found that the parties agreed to keep the transaction confidential. The trial court then stated that Boniske "may not have understood that the agreement was part of the contract, but she accepted the term. Therefore, there may be a mutual mistake which renders the contract voidable."

"A trial court may not enter judgment on a cause of action that a plaintiff did not plead." Lonero v. Dillick, 208 S.W.3d 323, 329 (Mo. App. E.D. 2006). "The purpose of pleadings is to 'present, define, and isolate the issues, so that the trial court and all parties have notice of the issues.'" The Medve Grp. v. Sombright, 163 S.W.3d 453, 456 (Mo. App. E.D. 2005) (quoting Norman v. Wright, 100 S.W.3d 783, 786 (Mo. banc 2003)). It is well settled that a party "'may not plead one state of facts and theory and to the unprepared surprise of his adversary recover on another and different theory and state of facts.'" Id. (quoting Faught v. St. Louis-San Francisco Ry. Co., 325 S.W.2d 776, 781 (Mo.1959)); see also Browning-Ferris Indus. of St. Louis, Inc. v. Landmark Sys., Inc., 822 S.W.2d 569, 571 (Mo. App. E.D. 1992) ("It is hornbook law that a party cannot recover for a cause of action not pleaded.").

Here, the Rosenfelds did not plead that the contract was voidable because of mutual mistake. The Rosenfelds sought a judgment declaring the contract null and void because they were unable to satisfy the contingency set forth in the contract. The Rosenfelds also did not raise

11

the issue of mutual mistake in their response to Boniske's counterclaim for breach of contract. Mutual mistake was never presented to the trial court as a theory of recovery. To any extent the trial court intended its finding regarding mutual mistake to be a judgment upon which the Rosenfelds would be entitled to relief, such judgment was in error.

Point Two is granted.

## Conclusion

We reverse the judgment of the trial court and enter judgment in favor of Boniske on Rosenfelds' claim for declaratory judgment and refund of earnest money, as well as on Boniske's counterclaim for breach of contract. To the extent that the trial court's judgment finds a mutual mistake existed that may render the contract voidable, we reverse that portion of the judgment and remand this matter to the trial court for a determination of Boniske's damages.

Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

12