

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

LLOYD H. HAMMOND AND
NANCY HAMMOND,

        Appellants,

v.

ROBERT TOOLE AND
TISHA L. TOOLE,

        Respondents,

and

F & C BANK,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

WD84598

Opinion filed:  April 5, 2022

**APPEAL FROM THE CIRCUIT COURT OF JOHNSON COUNTY, MISSOURI**
**THE HONORABLE BRENT F. TEICHMAN, JUDGE**

Division Two:  Alok Ahuja, Presiding Judge,
Edward R. Ardini, Jr., Judge and Janet Sutton, Judge

Lloyd and Nancy Hammond (collectively, "the Hammonds") appeal from the judgment of

the Circuit Court of Johnson County ejecting them from property, denying their request to set aside

or reform a warranty deed or, in the alternative, for an award of money damages, and quieting title

in favor of the purchasers of real estate, Robert and Tisha Toole (collectively, "the Tooles").

Finding no error, we affirm.

**Factual and Procedural Background**

The Hammonds owned property consisting of a home, and some outbuildings on eighty-one acres of pasture and timber located at 97 Southwest 951st Road, in Holden, Missouri ("the farm"). The farm had been in Lloyd Hammond's family since the 1800s. The Tooles owned the property just south of the Hammonds. The Hammonds and the Tooles had known each other for approximately thirty years. Robert Toole was close in age to the Hammonds' children, and he and Lloyd Hammond had a father-son type of relationship where they helped each other out on their farms, shared equipment, and confided in each other.

During the summer of 2017, Lloyd Hammond told Robert Toole that he had offered to sell the farm to his granddaughter for $160,000, while retaining the right to continue living on the property. The Hammonds, who were in their eighties, wanted to pay off debt, purchase a recreational vehicle, and travel. Robert Toole told Lloyd Hammond that $160,000 was too low and that the Hammonds should get at least $225,000 while retaining the right to live on the property. Lloyd Hammond proposed that amount to his granddaughter who declined the offer. Lloyd Hammond then made the offer to Robert Toole who accepted.

The Hammonds and Tooles sought the advice of two attorneys regarding the deal, including whether a trust or life estate was needed. The Hammonds decided they did not want to establish a trust or retain a life estate in the property and would instead rely on a "handshake deal" that would allow them to live on the property following the outright sale of the farm to the Tooles. The Hammonds also told their granddaughter that she would have the ability to purchase the farm from Robert Toole after the Hammonds' deaths.

Around this same time, the Hammonds took out a separate loan to purchase a recreational vehicle with the intent to pay off the loan and travel once they received the proceeds from the sale of the farm.

Robert Toole obtained and filled out a form real estate contract in which the Hammonds agreed to sell the farm to the Tooles for $225,000. The contract set out the purchase price, the closing date, and the legal description of the property, but it did not include a life estate for the Hammonds or mention the Hammonds retaining the right to live on the property. Both the Hammonds and Robert Toole signed the contract, and the bank set the closing date for October 30, 2018. At the closing, the Hammonds signed a warranty deed transferring the farm to the Tooles.

For the next eleven months, the Hammonds continued to live on the farm without paying rent, during which time they traveled in their RV. Before embarking on their RV travels, the Hammonds decided to rent the basement apartment to a friend of Robert Toole to watch over the home and take care of their cattle. The tenant paid $100 to the Hammonds, which they kept.

When the Hammonds returned from their travels in September 2019, a dispute arose between Lloyd Hammond and Robert Toole about electrical repairs that needed to be made to the farm house. Following this dispute, Robert Toole presented the Hammonds with a lease he had drafted outlining terms and restrictions for the Hammonds' continued use of the farm. The proposed lease did not require the Hammonds to pay rent but restricted their use of the property and required the removal of their cattle by February 29, 2020. The Hammonds refused to sign the lease.

Around this same time, a dispute also arose between Lloyd Hammond and his tenant resulting in law enforcement being called to the farm twice and the Hammonds applying for a temporary restraining order against the tenant.

3

After these incidents occurred, Robert Toole sent a letter through counsel attempting to evict the Hammonds from the farm. In response, the Hammonds filed this action in the Circuit Court of Johnson County seeking to have the warranty deed set aside or reformed, or, in the alternative, to obtain an award of damages for unjust enrichment or breach of fiduciary duty. The petition also included a claim for conversion relating to several items of personal property. In response, the Tooles asserted counterclaims to quiet title as well as for ejectment/unlawful detainer, and unjust enrichment.

A bench trial was held, at which multiple witnesses testified, including the Hammonds and Robert Toole. Robert Toole testified that he did not include a life estate or right of first refusal for the Hammonds' granddaughter in the real estate contract at the request of the Hammonds. Robert Toole acknowledged that he agreed to allow the Hammonds to remain living on the property at the time he purchased the farm, but worried about liability following the dispute over the electrical repair and Lloyd Hammond's disagreement with his tenant. The Hammonds asserted that by the time they realized that the sales documents did not include language allowing them to continue to reside on the property, Robert Toole told them it was too late.[1] The Hammonds admitted that they did not read either the real estate contract or the deed before signing them. Lloyd Hammond also admitted that he believed Robert Toole would honor their "handshake deal" despite it not being in the contract. Several witnesses testified to knowledge of an agreement between Robert Toole and the Hammonds that would permit the Hammonds to continue to live on the property, including the loan agent from the bank that provided the loan to Robert Toole to purchase the farm. The parties also acknowledged that they knew the farm was worth more than $225,000 at the time of the

---

[1] In addition, the Hammonds presented evidence that Lloyd Hammond experienced several head injuries in 2011, and that after those injuries, he relied more significantly on the assistance and advice of Robert Toole.

4

transaction. At trial, an appraiser testified that, as of November 1, 2019, the property was worth $470,000, but the parties disputed how much the farm had been worth at the time of the sale.

The trial court issued its findings of fact and conclusions of law quieting title in favor of the Tooles, ejecting the Hammonds from the farm, and finding insufficient credible evidence to support any award of money damages.[2] The Hammonds appeal from that judgment.

## Standard of Review

Our review from a court-tried case is governed by the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *See A2 Creative Grp., LLC v. Anderson*, 596 S.W.3d 214, 218 (Mo. App. W.D. 2020). "'We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Id*. (quoting *Brasher v. Craig*, 483 S.W.3d 446, 450 (Mo. App. W.D. 2016)) (citing *Murphy*, 536 S.W.2d at 32). We view the evidence "in the light most favorable to the judgment and contradictory evidence is disregarded." *Id*. (citing *Brasher*, 483 S.W.3d at 450). "'We also defer to the circuit court's determination of the weight to be given the evidence and credibility of the witnesses'" as "'[t]he circuit court is free to believe some, all, or none of the testimony of any witness.'" *Id*. (quoting *Brasher*, 483 S.W.3d at 450).

## Discussion

The Hammonds raise three points on appeal. In their first point, the Hammonds claim that the trial court misapplied the law by improperly applying the parol evidence rule. In their second point, the Hammonds allege that the trial court's judgment was against the weight of the evidence. Finally, in their third point, the Hammonds assert that the trial court erred in declining to award them money damages.

---

[2] The trial court found in favor of the Hammonds as to their conversion claims for personal property. No issue regarding the disposition of the conversion claim is raised on appeal, so we do not address it further.

*Point I – Misapplication of the Law*

In Point I, the Hammonds allege that the trial court misapplied the parol evidence rule, arguing that "the parol evidence rule was not applicable because the real estate contract and warranty deed were not fully integrated or exceptions to the rule applied[.]" The Hammonds claim that the trial court "used the parol evidence rule to exclude an[d] disregard clear, cogent and convincing evidence that supported setting aside or reforming the deed as the deed did not reflect the true and complete agreement of the parties." We find no error by the trial court.

"'In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous, final, and complete writing.'" *Rosenfeld v. Boniske*, 445 S.W.3d 81, 87 (Mo. App. E.D. 2014) (quoting *Poelker v. Jamison*, 4 S.W.3d 611, 613 (Mo. App. E.D. 1999)). This rule is "based on the premise that a written document is more reliable and accurate than fallible human memory." *Id*. (citing *Poekler*, 4 S.W.3d at 613). "The parol evidence rule is 'not a rule of evidence focusing on the probative reliability and trustworthiness of proffered oral evidence,' but rather 'a substantive rule that limits the evidence from which inferences may be drawn. . . .'" *Id*. (quoting *Poelker*, 4 S.W.3d at 613). "If extrinsic evidence is received in spite of a final and complete contract, with or without objection, it violates the parol evidence rule and may not be considered." *Id*. (citing *Poelker*, 4 S.W.3d at 613).

Here, the parties agree that they entered into a written contract for the sale and purchase of the farm. Both parties also agree that the written contract did not include a life estate or right of first refusal. Therefore, whether the trial court properly disregarded evidence relating to any oral agreement between the parties implicates the parol evidence rule.

6

"The parol evidence rule bars extrinsic evidence in construing an integrated contract, unless the contract is ambiguous." *Lee v. Bass*, 215 S.W.3d 283, 288 (Mo. App. W.D. 2007) (citing *Commerce Trust Co. v. Watts*, 231 S.W.2d 817, 820 (Mo. 1950)). Therefore, "[b]efore applying the parol evidence rule, a court first must determine whether a contract is integrated." *Rosenfeld*, 445 S.W.3d at 87 (citing *State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 489 (Mo. App. E.D. 2001)). "'A written agreement is integrated if it represents a final expression of one or more terms of the agreement.'" *Id.* (quoting *Maryville Land P'ship*, 62 S.W.3d at 489). "To determine whether a writing is integrated, we look to the face of the document itself without considering the surrounding facts and circumstances." *Id.* (citing *Maryville Land P'ship*, 62 S.W.3d at 489). "If the document appears to be a complete agreement on its face, it is conclusively presumed to be the final and complete agreement between the parties." *Id.* (citing *Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 812 (Mo. App. E.D. 1992)).

The real estate contract in this case appears on its face to be a complete and unambiguous agreement between the parties. The contract includes the parties' names and signatures, the consideration to be paid for the transaction, and a description of the property to be transferred. Indeed, there is no suggestion within the four-corners of the contract of the existence of additional terms or obligations imposed on the parties. Therefore, because the real estate contract was a completely integrated agreement, the trial court did not misapply the law by finding that the parol evidence rule precluded consideration of evidence external to the written document.

In addition, the Hammonds argue that, even if the contract was fully integrated, the exceptions to the parol evidence rule apply. As referenced above, "[t]he parol evidence rule bars evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous, final, and complete writing, absent fraud, mistake, accident or duress." *Bldg.*

*Erection Servs. Co. v. Plastic Sales & Mfg. Co., Inc.*, 163 S.W.3d 472, 479 (Mo. App. W.D. 2005) (citation omitted). The Hammonds assert that mistake, accident, and duress apply. We disagree.

"'Parol evidence is admissible to show that because of mutual mistake the writing did not reflect the intentions of the parties.'" *Brown v. Mickelson*, 220 S.W.3d 442, 448 (Mo. App. W.D. 2007) (quoting *Unlimited Equip. Lines, Inc. v. Graphic Arts Ctr., Inc.*, 889 S.W.2d 926, 933 (Mo. App. E.D. 1994)). "When a party seeks to reform a contract based upon mutual mistake, 'parol or extrinsic evidence is admissible to establish the mistake and to show how the writing should be reformed to conform to the parties' intention.'" *Id*. (quoting *Everhart v. Westmoreland*, 898 S.W.2d 634, 638 (Mo. App. W.D. 1995)). "'[A] mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption of vital fact upon which they based their bargain.'" *Id*. (quoting *Alea London Ltd. v. Bono-Soltysiak Enters.*, 186 S.W.3d 403, 415 (Mo. App. E.D. 2006)). "'[W]hether parties are laboring under a mutual mistake is normally a question of fact.'" *Id*. (quoting *Aldea London Ltd.*, 186 S.W.3d at 415).

Here, the record shows that the parties were not laboring under a mutual mistake. Although both parties testified that there was a "handshake deal" allowing the Hammonds to continue to reside on the farm for the remainder of their lives, the evidence showed that the Hammonds did not want a life estate or any other legal recording of such agreement included in the real estate contract.[3] Thus, the failure to incorporate the "handshake agreement" into the sales contract or any other document related to the transaction (or make any reference to its existence) was not the product of mutual mistake or accident but instead resulted from a conscious desire of the Hammonds.

---

[3] In fact, an attorney with whom the Hammonds consulted testified that he specifically explained to the Hammonds that if the Tooles acquired the property without a life estate or other written agreement safeguarding their interest, the Tooles would be able to evict them from the property. According to the attorney, the Hammonds indicated that they understood this risk and wanted to proceed without any such safeguards.

The evidence also showed that the Hammonds were not under duress when they signed the real estate contract. "'[T]he central question with respect to duress is whether, considering all surrounding circumstances, one party to the transaction was prevented from exercising his free will by threats or wrongful conduct of the other.'" *Costello Family Trust Dated July 20, 2006 v. Dean Family Lotawana Trust Dated July 20, 2006*, 551 S.W.3d 561, 572 (Mo. App. W.D. 2018) (quoting *Slone v. Purina Mill, Inc.*, 927 S.W.2d 358, 370-71 (Mo. App. W.D. 2018)).

Although the Hammonds were in their 80s and Lloyd Hammond and Robert Toole had a father/son relationship, the trial court found, based on the credible evidence produced, that the Hammonds were under no duress in selling the farm to Robert Toole or in signing the contract prepared by Robert Toole. The Hammonds admitted that they were eager to complete the sale so they could retire, repay debt and travel, and, while they claimed not to have read the real estate contract prior to signing, they acknowledged no external forces prevented them from doing so.

The real estate contract in this case was a fully integrated contract, and, thus, the parol evidence rule precluded the trial court's consideration of evidence outside the four corners of that document. Moreover, the trial court did not misapply the law in finding that none of the exceptions to the parol evidence rule applied. Point I denied.

*Point II – Weight of the Evidence*

In Point II, the Hammonds claim that the trial court's judgment was against the weight of the evidence, arguing that "there was clear, cogent and convincing material facts and evidence that the deed did not represent the true and complete agreement of the parties due to mistake, undue influence, or lack of consideration which the court omitted from its findings of fact and conclusions of law[.]"

"'We must exercise our power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and only with a firm belief that the decree or judgment is wrong.'" *O'Dell v. Mefford*, 211 S.W.3d 136, 141 (Mo. App. W.D. 2007) (quoting *Evans v. Wittorff*, 869 S.W.2d 872, 875 (Mo. App. S.D. 1994)). "'The term 'weight of the evidence' means its weight in probative value, not the quantity or amount of evidence.'" *Id.* (quoting *City of Kansas City v. N.Y.-Kan. Bldg. Assocs., L.P.*, 96 S.W.3d 846, 861 (Mo. App. W.D. 2002)). "'As the trier of fact, it is the trial court's function and duty to assess the weight and value of the testimony of each witness.'" *Id.* (quoting *Legacy Homes P'ship v. Gen. Elec. Capital Corp.*, 50 S.W.3d 346, 356 (Mo. App. E.D. 2001)). "Thus, in determining whether a judgment is against the weight of the evidence, 'we must give due regard to the trial court's opportunity to judge the credibility of the witnesses.'" *Id.* (quoting *Evans*, 869 S.W.2d at 875).

In their brief, the Hammonds point us to multiple facts that were not included in the trial court's findings that they allege were undisputed and supported their claim for equitable relief. The Hammonds argument ignores, however, that the trial court "'is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective.'" *Wilson v. Trusley*, 624 S.W.3d 385, 402 (Mo. App. W.D. 2021) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014)). "'This includes facts expressly found in the written judgment or necessarily deemed found in accordance with the result reached.'" *Id.* (quoting *Ivie*, 439 S.W.3d at 206).

All of the evidence described by the Hammonds was either found by the trial court to lack credibility or was excluded from the trial court's consideration by the parol evidence rule. As we stated in Point I, *infra*, the parol evidence rule required the trial court to disregard extrinsic evidence beyond the four corners of the contract. In addition, as stated above in this point, we are

bound by the credibility findings of the trial court when considering an against-the-weight-of-the-evidence claim. In reviewing the record in accordance with our standard of review, we are not left with the firm belief that the trial court's judgment is wrong. *See Wilson*, 624 S.W.3d at 401. Point II denied.

*Point III – Alternative Relief*

In Point III, the Hammonds assert that the trial court erred in failing to award them monetary damages pursuant to their claim of unjust enrichment, arguing that "if the court was not going to set aside or reform the deed there was clear, cogent, and convincing evidence that [the Tooles] were unjustly enriched by purchasing the real estate for substantially less than fair market value without honoring their agreement and assurances that the Hammonds would be able to reside on the property for their lives."

"To establish a claim for unjust enrichment, a plaintiff must prove: '(1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'" *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 111 (Mo. App. W.D. 2011) (quoting *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010)). "'The principle of unjust enrichment has given rise to the doctrine of quasi-contract, also known as contract implied in law, as a theory of recovery.'" *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. App. W.D. 2010). "It is a well-settled principle of law that implied contract claims arise only where there is no express contract." *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. App. W.D. 2014) (citing *A & L Underground, Inc. v. Leigh Const., Inc.*, 162 S.W.3d 509, 511 (Mo. App. W.D. 2005)). "Accordingly, a plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover.'" *Id.* (citation omitted).

Here, the parties had a contract for the sale and purchase of the farm. Therefore, the Hammonds cannot recover under a theory of unjust enrichment. Although the Hammonds sold the farm, and the Tooles purchased it, for less than fair market value, and the Hammonds now regret their decision to sell the property, that does not mean the contract was inequitable. "[T]he policy of the law is to let parties weigh the benefits pro and con and leave them free to make whatever contract between themselves that they please." *Bydalek v. Brines*, 947 S.W.2d 135, 143 (Mo. App. S.D. 1997) (citations omitted). "The general rule of freedom of contract includes the freedom to make a bad bargain." *Id.* (citing *Sanger v. Yellow Cab. Co., Inc.*, 486 S.W.2d 477, 481-82 (Mo. banc 1972)). Therefore, the trial court did not err in denying the Hammonds' claim for alternative relief. Point III denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

12